Bret A. Stone     SBN 190161     BStone@PaladinLaw.com
John R. Till     SBN 178763     JTill@PaladinLaw.com
Michael W. Kisgen     SBN 275612     MKisgen@PaldinLaw.com
PALADIN LAW GROUP® LLP
1176 Boulevard Way
Walnut Creek, California 94595
Telephone: (925) 947-5700
Facsimile: (925) 935-8488

*Counsel for Haskins*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD E. HASKINS, *et al.*,<br><br>                          *Plaintiffs,*<br><br>v.<br><br>CHEROKEE GRAND AVENUE LLC, *et al.*,<br><br>                          *Defendants.* | Case No. CV 11-05142-JST<br><br>HASKINS' OPPOSITION TO CHEROKEES' MOTION FOR LEAVE TO FILE DISMISSAL OF COUNTERCLAIMS WITHOUT PREJUDICE<br><br>Hearing:<br>Judge Jon S. Tigar<br>Courtroom 9, 19th Floor<br>March 21, 2013<br>2:00 p.m. |
| AND RELATED CROSS ACTIONS. | |

## I. INTRODUCTION

This is an environmental contamination case brought by Plaintiffs and Counter-Defendants Richard E. Haskins, Arthur L. Haskins, and the Estate of Arthur "Buzz" Haskins, Jr.'s (collectively, "Haskins"), the property owners of the Former San Bruno Channel, which neighbors a former paint manufacturing factory (the "Fuller-O'Brien Property"). Counterclaimants Cherokee Grand Avenue, LLC and Cherokee San Francisco, LLC (collectively, "Cherokee") bought the Fuller-O'Brien Property and took responsibility for the known environmental liabilities. In response to Haskins' lawsuit regarding these environmental liabilities, Cherokee filed a counterclaim of its own regarding its past and future costs relating to the contamination – the very subject matter of Haskins' claims. If Cherokee didn't bring its



counterclaim, it would be barred from doing so under Federal Rules of Civil Procedure, Rule 13(a).[1] Therefore, because Cherokee's counterclaim was compulsory, it would be procedurally improper to dismiss the counterclaim now without prejudice; it must be dismissed *with* prejudice.

Furthermore, Haskins would suffer plain legal prejudice if Cherokee's counterclaim is dismissed without prejudice. Haskins has conducted and concluded extensive discovery and is finishing its expert discovery in order to defend against Cherokee's claims. Additionally, Haskins has expended great efforts to prepare a motion for summary judgment against Cherokee's counterclaim.

Haskins would welcome the Court granting Cherokee's voluntary dismissal provided it set the condition that it would be *with* prejudice. Haskins also requests that the dismissal is conditioned upon Cherokee paying Haskins' legal defense costs, including expert witness fees and attorneys' fees, due to the prejudice it will suffer.

Finally, Cherokee's portrayal of confidential settlement discussions in both inappropriate and inaccurate.

## II. FACTUAL BACKGROUND

Paint manufacturing at the Fuller-O'Brien Property began in the late 1800s. Fuller-O'Brien's paint manufacturing operations resulted in various hazardous wastes, including heavy metals and semi-volatile organic compounds, being released into the environment at the Fuller-O'Brien Property. Haskins owns the Former San Bruno Channel, the slough and wetland area to the south of the Fuller-O'Brien Property. Haskins alleges that the contamination migrated from the Fuller-O'Brien Property into the Channel before and during Fuller-O'Brien's ownership and operation by way of surface water and suspended sediment runoff. Of the hazardous wastes and hazardous substances found on the Fuller-O'Brien Property, the most widespread was lead, but the contamination was also characterized by elevated levels of nickel, arsenic, and SVOCs. These very same hazardous wastes are found in elevated levels in the Former San Bruno Channel.

Cherokee is a private equity firm comprised of multiple corporate entities that invests in contaminated real estate for redevelopment. Cherokee purchased the Fuller-O'Brien Property in 1999

---

[1] All further references to "Rule" shall refer to the Federal Rules of Civil Procedure unless stated otherwise.

and as part of the purchase Cherokee entered into an Environmental Indemnity Agreement with Fuller-O'Brien. In the Environmental Indemnity Agreement, Cherokee agreed to indemnify Fuller-O'Brien "against any and all liabilities . . . relating to or arising out of the presence of Hazardous Materials in, on, under, upon, about or beneath the [Fuller-O'Brien] Property."

On May 14, 2004, the Regional Water Quality Control Board – San Francisco Bay Region (the "Water Board") issued to both Haskins and Cherokee a "Request for Technical Report - San Bruno Channel, South San Francisco, California." The parties entered into a written Environmental Cost Sharing Agreement in September 2005 under which Haskins and Cherokee agreed to equally share the costs of preparation and approval of a Revised Corrective Measures Workplan.

On November 7, 2006, a Revised Corrective Measures Implementation Workplan was issued by EnviroAssets, Inc., the parties' jointly retained consultant. The parties later agreed to share the remediation costs, but Cherokee never lived up to that agreement.

On October 20, 2011, Haskins filed its original complaint in order to avoid or minimize its alleged liability associated with responding to the environmental contamination in the Former San Bruno Channel. Dkt. 1. Cherokee filed its counterclaim based on the same contamination and recovery associated with its alleged remediation. Dkt. 18. Non-expert discovery ended on November 19, 2012, while the expert discovery cutoff is quickly approaching on March 29, 2013. Dkt. No. 31. The case is so far along now that Haskins has spent months drafting a motion for summary judgment and supporting papers.

### III. ARGUMENT

**A. Cherokee's counterclaim was compulsory as the essential facts between both Haskins' and Cherokee's claims share such a clear logical relationship that they must be resolved in one lawsuit.**

Rule 13(a)(1) requires that a responding party must plead as a counterclaim any claim which at the time of responding it has against the opposing party if that claim:

    (A)    arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and
    (B)    does not require adding another party over whom the court cannot acquire jurisdiction.

The Ninth Circuit applies the liberal "logical relationship" test to determine "whether the essential



facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *In re Pegasus Gold Corp.*, 394 F.3d 1189, 1197 (9th Cir. 2005) (*citing Pochiro v. Prudential Ins. Co.*, 827 F.2d 1246, 1249 (9th Cir. 1987)).

Here, it cannot be denied that the essential facts between Haskins' claims and Cherokee's counterclaims are "logically connected" in a very clear way. In the most simple terms, Haskins contends Cherokee is responsible for the cleanup of the Former San Bruno Channel and must pay for the past and future costs of response. Conversely, Cherokee points its finger at Haskins asserting that Haskins is liable for the contamination relating to the Former San Bruno Channel and must pay Cherokee's past and future response costs.

The liberal Ninth Circuit "logical relationship" test to determine whether Cherokee's claim is compulsory is satisfied. The connection between each party's claims and the essential facts are best explained in the parties' own words: "the principal factual issues in dispute will be the source, nature, extent, and timing of the contamination at the San Bruno Channel Site." Joint Initial Case Management Conference Statement, Dkt. No. 17. It is unquestionable that the essential facts for Haskins' and Cherokee's claims are "so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *In re Pegasus Gold Corp.*, 394 F.3d at 1197. Therefore, Cherokee's counterclaim is compulsory under Rule 13(a), which prevents Cherokee from unfairly taking the proverbial second bite of the apple. Cherokee must address its claims relating to the contamination at the Former San Bruno Channel in this lawsuit or lose those claims forever.

**B. The Court must grant Cherokee's voluntary dismissal *with* prejudice.**

It would be improper to grant Cherokee's voluntary request for dismissal under Rule 41(a)(2) if it is done so without prejudice. The rationale for a dismissal with prejudice is clear.

> The law abhors a multiplicity of actions, and the obvious intent of the Legislature ... was to provide for the settlement, in a single action, of all conflicting claims between the parties arising out of the same transaction.... Thus, a party cannot by negligence or design withhold issues and litigate them in successive actions; he may not split his demands or defenses; he may not submit his case in piecemeal fashion.

*ZTEX Energy, LLC v. Crest Oil & Gas, Ltd.*, 2011 WL 445028 at *5 (E.D. Cal. Feb. 8, 2011).

Moreover, if a party has a counterclaim which is compulsory and fails to plead it, it is lost, and cannot be asserted in a second, separate action after conclusion of the first. *Hydranautics v. FilmTec*



*Corp.*, 70 F.3d 533, 536 (9th Cir. 1995) (citing *Seattle Totems Hockey Club, Inc. v. National Hockey League*, 652 F.2d 852, 854 (9th Cir. 1981).

Thus, if Cherokee had not filed its counterclaim, it would be lost. Logically, it follows that if Cherokee now dismisses its compulsory counterclaim voluntarily, it too will be lost forever; it cannot be asserted in a new, future action. It may be that this result is too obvious or intuitive as few courts have discussed whether a voluntary dismissal of a compulsory counterclaim should be made with or without prejudice. However, a fellow district court in the Ninth Circuit has determined that such a dismissal should be made *with* prejudice. *Utilx Corp. v. Novinium, Inc.,* 2009 WL 3517576 (W.D. Wash. Oct. 27, 2009). There, the court explained:

> Rule 41(a)(2) gives the Court discretion to dismiss Defendant's voluntary dismissal *with prejudice*. A court may dismiss a counterclaim with prejudice where it is a compulsory counterclaim and where the counter-plaintiff has sought only voluntary dismissal.

*Utilx,* 2009 WL 3517576 at *1 (citing *Kissell Co. v. Farley*, 417 F.2d 1180, 1182 (7th Cir. 1969). (Emphasis added).

Therefore, the compulsory nature of Cherokee's counterclaim would make dismissal without prejudice improper. Cherokee cannot leave the door open for a second lawsuit against Haskins. Dismissal of Cherokee's counterclaim can only be *with* prejudice.

**C. The Court should condition dismissal upon Cherokee paying Haskins' defense costs because Haskins will suffer plain legal prejudice due to its extensive discovery and expert discovery and elaborate preparations in drafting a motion for summary judgement.**

Rule 41(a)(2) states,"an action may be dismissed at the plaintiff's request only by court order, *on terms that the court considers proper*." (Emphasis added). Further, when ruling on a motion for voluntary dismissal the court is required to "consider whether the [cross-defendant] will suffer some plain legal prejudice as a result of the dismissal." *Hamilton v. Firestone Tire & Rubber Co.*, 679 F.2d 143, 145 (9th Cir. 1982). However, *Hamilton* makes clear that "[p]lain legal prejudice does not result simply when defendant faces the prospect of a second lawsuit or when plaintiff merely gains some tactical advantage." *Id.* Rather, "it is created when, for example, 'extensive discovery' and 'intensive preparation for trial' have already been conducted by the [cross-defendant], or when the claims to be dismissed are inextricably linked to those which would remain." *McCovey v. Astrazeneca Pharmaceuticals, L.P.*, 2006 WL 2329465 (N.D. Cal. Aug. 9, 2006) (citing *Kern Oil Refining Co. v.*

*Tenneco Oil Co.*, 792 F.2d 1380, 1390 (9th Cir. 1986).

Here, Haskins has engaged in extensive discovery and intensive preparation of a motion for summary judgment. Non-expert discovery in this case was elaborate and time-consuming, often requiring Haskins to meet and confer on a variety of topics and resulting in multiple stipulations. The non-expert discovery deadline was November 19, 2012. However, the definitive majority of all Cherokee's documents were electronically produced to Haskins in multiple batches on November 27-29, 2012 and December 3, 5, 7 and 21, 2012. Dkt. 59, Exh. 2. Further, the parties entered into two stipulations, filed October 25, 2012 and November 8, 2012, to continue the date of depositions past the discovery deadline. Dkts. Nos. 49, 51. Each stipulation was granted by an order of this Court. Dkts. Nos. 50, 52.

In order to obtain the necessary discovery in this case, Haskins was required to travel across the country to take the depositions of past and present Cherokee employees. Haskins traveled to Denver, Colorado to take the depositions of Dwight Stenseth, former President of Cherokee Grand Avenue, LLC, Cherokee San Francisco, LLC, and Cherokee Acquisition Corp., and Douglas Mosteller, Environmental Project Manager for a number of Cherokee entities. Declaration of Michael W. Kisgen ("Kisgen Decl.") ¶2. Haskins logged even more miles traveling to Raleigh, North Carolina, to depose Cherokee's Rule 30(b)(6) designee, Oliver Pau. Kisgen Decl. ¶3. Furthermore, Haskins, at considerable expense, has retained expert witnesses to refute Cherokee's counterclaims and to demonstrates its own claims.

Haskins' efforts in discovery paid off, and around mid-December 2012 Haskins began drafting a motion for summary judgment against Cherokee. Kisgen Decl. ¶4. A typical motion for summary judgment is an intensive process, however, Judge Yvonne Gonzalez Rogers' standing order requires a Separate Statement of Undisputed Facts and the preparation of a pre-filing letter, both of which Haskins had nearly completed before Cherokee's instant motion to dismiss its counterclaim. *Id.* Therefore, based on the extensive discovery and summary judgment motion preparation, Haskins would suffer plain legal prejudice.

Cherokee itself admits that a party can recover costs and attorneys' fees when the court grants a request for voluntary dismissal. Cherokee's Motion to Dismiss Counterclaim, Dkt. No. 68 at 4:9-10.

However, Cherokee incorrectly attempts to head off at the pass Haskins' prejudice argument by citing to *Koch v. Hankins*, 8 F.3d 650, 652-653 (9th Cir. 1993) ("[o]nly those costs incurred for the preparation of work product rendered useless by the dismissal should be awarded as a condition of the voluntary dismissal."). *Koch's* finding is inapposite here and is easily distinguished because it applies to the voluntary dismissal of a case where another related, ongoing litigation is being held in a different forum. The *Koch* holding relies on two D.C. Circuit cases, and in all three cases the court examined a situation where a party "seeks voluntary dismissal in one forum to pursue pending litigation against [a party] in another forum." *Id,* at 652. The Ninth Circuit adopted this logic regarding applicable costs "to require that the district court review evidence, including documentation, showing that an award of costs consists of those expenses incurred solely on account of the federal action." *Id.*

In the present case, Cherokee is not seeking to dismiss its case due to ongoing litigation in another forum. The court need not be concerned with looking at "those expenses solely incurred on account of the federal action" because there is no other forum involved. To wit, this is because Cherokee's claim is compulsory and it would be improper for Cherokee to have filed its claim in any other forum.

Ultimately, Haskins has expended considerable costs in defending against Cherokee's counterclaim. Haskins would suffer plain legal prejudice should Cherokee's counterclaim be dismissed without prejudice and Haskins would again be required to fly all over the country to conduct discovery and to draft another extensive summary judgment motion. Therefore, the Court should condition dismissal upon Cherokee's paying Haskins costs for discovery and attorneys' fees, including expert witness fees, for drafting the motion for summary judgment.

**D. Cherokee has violated the Federal Rules of Evidence regarding confidential settlement discussions by disclosing various facts within its motion.**

Federal Rules of Evidence 408(2) states that it is inadmissible to introduce evidence either to prove or disprove the validity or amount of a disputed claim regarding "conduct or a statement made during compromise negotiations about the claim...." Although Cherokee says in its motion that it describes the confidential settlement communications "without divulging the details of the discussion," the declarations of counsel do not hold back much in their description of protected confidential settlement discussions. This information should have never been made public.

HASKINS' OPPOSITION TO CHEROKEES' MOTION FOR LEAVE TO FILE DISMISSAL OF COUNTERCLAIMS WITHOUT PREJUDICE

Haskins has in its possession numerous letters and emails that would set the record straight on those statements, but those too are confidential settlement communications. As the law so clearly requires dismissal *with* prejudice, the basis for its vague and uncertain settlement with Haskins' insurer may be less important. Haskins is genuinely confused, however, by Cherokee's arbitrary selection of July 24, 2012 as the effective cutoff for its recovery of past costs. Why that date? Why not the date the written settlement agreement with Wausau was signed? Does a written settlement agreement with Wausau even exist? If it does, it certainly has not been provided to Haskins. Cherokee's introduction of said evidence is inadmissible and Cherokee should be admonished for such a blatant introduction of inadmissible evidence.

### IV. CONCLUSION

For the foregoing reasons, the Court should dismiss Cherokee's counterclaim *with* prejudice and require Cherokee to pay Haskins attorneys' fees and costs, including expert witness fees.

DATED: February 19, 2013        PALADIN LAW GROUP® LLP

　　　　　　　　　　　　　　　　 */s/ Bret A. Stone*

　　　　　　　　　　　　　　　　 Bret A. Stone
　　　　　　　　　　　　　　　　 Counsel for Haskins

