1 Bret A. Stone      SBN 190161      BStone@PaladinLaw.com
   John R. Till        SBN 178763      JTill@PaladinLaw.com
2 Michael W. Kisgen   SBN 275612      MKisgen@PaladinLaw.com
   PALADIN LAW GROUP® LLP
3 1176 Boulevard Way
   Walnut Creek, California 94595
4 Telephone: (925) 947-5700
   Fax: (925) 935-8488
5
   Attorneys for Richard E. Haskins, Arthur L.
6 Haskins, and the Estate of Arthur "Buzz" Haskins,
   Jr.
7
   Stephen McKae      SBN 66797       smckae@wendel.com
8 Steven M. Morger    SBN 115108      smorger@wendel.com
   WENDEL, ROSEN, BLACK & DEAN LLP
9 1111 Broadway, 24th Floor
   Oakland, California 94607-4036
10 Telephone: (510) 834-6600
    Fax: (510) 834-1928
11
    Attorneys for Defendants/Counterclaimants
12 Cherokee San Francisco, LLC, Cherokee Grand
    Avenue, LLC, and Defendants Cherokee
13 Investment Partners II, L.P., and Cherokee
    Acquisition Corp.
14

15             UNITED STATES DISTRICT COURT

16            NORTHERN DISTRICT OF CALIFORNIA

17

| | |
|---|---|
| 18   RICHARD E. HASKINS, *et al.*, | Case No. CV 11 5142 JST |
| 19        *Plaintiffs,* | JUDGMENT PURSUANT TO STIPULATION |
| 20      v. | FED. R. CIV. P. 41(a)(2) |
| 21   CHEROKEE GRAND AVENUE LLC, *et al.*, | |
| 22        *Defendants.* | |
| 23   AND RELATED CROSS ACTIONS. | |

24

25       Plaintiffs and Counter-Defendants Richard E. Haskins, Arthur L. Haskins, and the Estate of

26 Arthur "Buzz" Haskins, Jr. (collectively, "Haskins") and Defendants and Counterclaimants

27 Cherokee Grand Avenue LLC, Cherokee San Francisco LLC, Cherokee Investment Partners II, LP,

28

and Cherokee Acquisition Corp. (collectively, "Cherokee") having stipulated to entry of judgment and the Court having approved such stipulation,

IT IS HEREBY ORDERED AND ADJUDGED:

1. Judgment is hereby entered for Defendants and Counterclaimants Cherokee against Plaintiffs and Counter-Defendants Haskins on Cherokee's counterclaims in the amount of One Million Seven Hundred Thousand Dollars ($1,700,000). The judgment shall be executable only against the rights and interests of Haskins in policies of insurance or proceeds from policies of insurance, whenever and wherever held and whether segregated or maintained in a common account with assets derived from other sources. Judgment shall not be executable against Haskins' other personal or business assets. Such amounts as are recovered, other than any award of attorneys' fees or costs, are required to be deposited into the San Bruno Channel Remediation Trust dated August 1, 2013, Richard E. Haskins, Trustee.

2. The First Amended Complaint of Plaintiffs and Counter-Defendants Haskins against Defendants and Counterclaimants Cherokee is hereby dismissed with prejudice.

3. A settlement fund should be, and hereby is, established, and shall be operated so as to qualify either as a "Designated Settlement Fund" or "Qualified Settlement Fund" pursuant to section 468B of the Internal Revenue Code, 26 U.S.C. § 468B, and the regulations promulgated pursuant thereto and codified at 26 C.F.R. § 1.468B and in accordance with the terms and conditions of the Declaration of Trust for the San Bruno Channel Remediation Trust attached hereto as Appendix B and incorporated by reference as though fully set forth herein.

4. Each party shall bear its own attorney fees and costs.

5. The United States District Court for the Northern District of California shall retain jurisdiction to enforce the terms of the Settlement Agreement, which is attached as Exhibit A, and the Declaration of Trust of the San Bruno Channel Remediation Trust, attached as Appendix A to the Settlement Agreement, both incorporated herein by reference.

[SIGNATURE ON FOLLOWING PAGE]

1

2     ENTERED:   August 28, 2013      RICHARD W. WIEKING
                                       Clerk of Court
3

4

5     _____
                                       Deputy Clerk
6                                      William Noble

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

017481.0001\3070462.2

# EXHIBIT A

## SETTLEMENT  AGREEMENT AND RELEASE

# APPENDIX B

## DECLARATION OF TRUST OF THE SAN BRUNO CHANNEL REMEDIATION TRUST

017481.0001\3070462.2

**EXHIBIT A**

**SETTLEMENT AGREEMENT AND RELEASE**

017481.0001\3070462.2

# SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release, as of the Effective Date, is entered into between plaintiffs Richard E. Haskins, Arthur L. Haskins, and the Estate of Arthur "Buzz" Haskins, Jr. (collectively, "Haskins") and defendants Cherokee Grand Avenue LLC, Cherokee San Francisco LLC, Cherokee Investment Partners II, LP, and Cherokee Acquisition Corp. (collectively, "Cherokee"). Haskins and Cherokee are referred to herein collectively as "Settling Parties" and individually as "Settling Party."

1    Background

WHEREAS Haskins is the owner of the real property located at 500 East Jamie Court, South San Francisco, California, APN 015-102-34 ("Property").

WHEREAS a paint manufacturing factory was located to the north of the Property from approximately 1898 to approximately 1995;

WHEREAS Cherokee Acquisition Corp., Cherokee San Francisco LLC, and Cherokee Grand Avenue LLC purchased the real property consisting of the paint manufacturing factory in 1999, performed an environmental cleanup, obtained approval for closure of the cleanup from government agencies, and then sold it in 2000;

WHEREAS environmental investigations conducted at the Site have shown that the Property is contaminated with heavy metals and semi-volatile organics;

WHEREAS Haskins filed an action in order to avoid or minimize its alleged liability associated with responding to the contamination and to preserve its claims against Cherokee from being barred by the applicable statutes of limitations. The action filed in the United States District Court, Northern District of California, entitled *Richard E. Haskins, et al. v. Cherokee Grand Avenue LLC, et al.*, Case No. C-11-05142-JST, alleged that the historical paint manufacturing operations contributed to the contamination at the Site;

WHEREAS Cherokee filed a counterclaim against Haskins in the Action alleging that Haskins caused or contributed to the contamination and was responsible for the past and future costs associated with the cleanup of the Property;

WHEREAS Settling Parties deny any allegation of liability with respect to the contamination;

WHEREAS this Agreement is intended to resolve the liability of Settling Parties;

WHEREAS the Settling Parties wish to avoid the expense and disruption of litigation over the issue of their alleged liability for the contamination and the Settling Parties are prepared to settle their differences strictly as a business decision with respect to all such claims and without prejudice to their respective positions on liability in the Action, or in any other dispute, arising out of or relating in any way to the investigation and/or remediation of environmental contamination at the Site;

NOW, THEREFORE, in consideration of the mutual promises set forth in this Agreement, and for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as to the terms and conditions as follows:

## 2 Definitions

Words used in this Agreement are to be taken and understood in their normal and ordinary sense, unless this Agreement indicates that a different meaning is intended. Whenever the following terms are used in this Agreement, the meanings of this section apply.

2.1 "Action" means the lawsuit pending in the United States District Court, Northern District of California, entitled *Richard E. Haskins, et al. v. Cherokee Grand Avenue LLC, et al.*, Case No. C-11-05142-JST, including all counterclaims.

2.2 "Agreement" means this Settlement Agreement and Release.

2.3 "Claims" means any right or cause of action, including but not limited to counterclaims, cross-claims, actions, demands, rights, liabilities, and obligations of every kind and nature and under any and all legal theories, including notices of partial or total responsibility (including Potential Responsible Party or "PRP" notices), whether known or unknown, past or present, suspected or unsuspected, liquidated or unliquidated, relating to the Site, including, without limitation, claims for:

2.3.1 any past or present fees, attorneys' fees, costs, expenses, and liabilities incurred or which may be incurred for testing, investigating, remediating, removing, neutralizing, detoxifying, monitoring, containing, cleaning up, treating, or in any way responding to environmental contamination in soil, groundwater, surface water, equipment, or any other items that now exist or in the past existed at, on, under, or emanating from the Site, including without limitation, responding to and defending against any request, directive, order or lawsuit by any past or present regulatory agency, the California Regional Water Quality Control Board, the United States Environmental Protection Agency, other federal, state, local or other governmental or quasi-governmental agencies and/or private persons, organizations or entities relating to the Site;

2.3.2 damages of any kind, including compensatory and punitive damages, or other legal, statutory, or equitable relief for or relating to bodily injury, personal injury, property damage, cleanup, remediation or any other harm, injury, damage or violation or need for remedy of any kind, and/or any other claim, demand, or cause of action, arising out of the Settling Parties' alleged, actual, threatened, potential or vicarious acts, omissions, liability, or responsibility (including, but not limited to, alleged liability or responsibility as a generator, disposer, manufacturer, distributor, transporter, or operator), whether at law or in equity, arising out of or involving (a) alleged, actual, threatened or potential pollution, contamination or other alleged injurious environmental or toxic condition, (b) alleged, actual, threatened or potential exposure to or presence of tar, hydrocarbons, smoke, vapors, odors, noise, soot, fumes, acids, alkalis, toxic chemicals, solids, liquids or gases, waste, recycled or recyclable materials or alleged irritants, contaminants or pollutants, or (c) alleged, actual, threatened or

potential exposure to or presence of injurious environmental or toxic conditions, by any form of allegedly harmful, toxic, radioactive, nuclear, hazardous or injurious substance or material (including, but not limited to, any "hazardous substance" or "hazardous waste" as those terms are defined in 42 U.S.C. §9601); and

2.3.3 any fees, attorneys' fees, costs, expenses, and/or other liabilities arising from, sought in, or relating to the Action or the settlement of the Action.

2.4 "Court" means the United States District Court, Northern District of California.

2.5 "Effective Date" means the date Court established the Trust.

2.6 "Fund II" means Cherokee Investment Partners II, LP or a liquidating trust or similar entity designated by Fund II in writing to act on its behalf with respect to Fund II's affairs.

2.7 "RWQCB" means the San Francisco Bay Regional Water Quality Control Board.

2.8 "Settlement Proceeds" means those assets paid or assigned by Settling Parties as the consideration for this Agreement as described in Section 3, below.

2.9 "Site" means the Property and any place where environmental contamination of any type or nature is alleged to have migrated to or from the Property.

2.10 "Trust" means the San Bruno Channel Remediation Trust, a copy of which is attached as Appendix A to this Agreement and incorporated herein by reference. The purpose of the Trust is to collect and disburse amounts for environmental investigation and remediation (as defined in 26 C.F.R. Section 301.7701-4(e)(1)) of the Site to resolve, satisfy, mitigate, address, or prevent the liability or potential liability of persons imposed by federal, state, or local environmental laws.

3 <u>Settlement Proceeds</u>

In consideration of the agreements and covenants contained within this Agreement, Settling Parties shall make the following payments or assignments to the Trust or provide the following consideration:

3.1 Haskins shall stipulate to a judgment in favor of Cherokee of $1,700,000 ($23,000 for past costs and the remaining amount for future costs) on Cherokee's counterclaim and to dismissal with prejudice of Haskins' claims against Cherokee. The stipulation for judgment shall provide that the judgment is not executable against Haskins' personal or business assets, other than insurance assets.

3.2 Richard Haskins agrees to serve as the initial trustee of the Trust without compensation.

3.3 Cherokee shall assign to the Trust as provided in paragraph 12 of this Agreement (i) its judgment against Haskins; and (ii) such Claims for contribution related to the subject matter of the Action as Cherokee has against third parties unaffiliated with Cherokee, excluding Claims against any of Cherokee's insurers. If any claim is not assignable, then

the proceeds of those claims shall be assigned to the Trust and the Trustee shall be appointed as the attorney in fact to pursue enforcement and recover the assigned claims and proceeds of the assigned claims. The pursuit of such claims by the Trustee as attorney-in-fact shall be at the sole cost and expense of the Trustee.

3.4     Thirty (30) days following entry of judgment, Fund II will deposit the amount of One Hundred Fifty Thousand Dollars ($150,000) into an attorney trust account selected by Cherokee with instructions to be approved by the Settling Parties for release of funds to the Trust upon satisfaction of the condition in paragraph 3.5. At Fund II's election, the account may be non-interest bearing. Interest, if any, shall be applied as required by state law for attorney trust accounts.

3.5     Upon deposit by Haskins of One Million Two Hundred Thousand Dollars ($1,200,000), cumulatively and in one or more installments, into the Trust within five (5) years following entry of judgment from any source (including Haskins' own funds), One Hundred Fifty Thousand Dollars ($150,000) from the account described in paragraph 3.4 shall be released from the attorney trust account into the trust according to the approved instructions, and the balance of the attorney trust account, if any, will be released to Fund II. If a deposit by Haskins of One Million Two Hundred Thousand Dollars ($1,200,000) is not made into the Trust within five (5) years following entry of judgment, all funds in the attorney trust account will be released to Fund II and Cherokee shall have no further obligation to contribute funds to the Trust.

3.6     Haskins will comply with the covenants and conditions of the Declaration of Trust for the San Bruno Channel Remediation Trust attached hereto as Appendix A.

4       Mutual Releases

4.1     Releases by Haskins

       Haskins for itself and for anyone claiming by, through or with it, does hereby fully and forever remise, release and discharge Cherokee and each of its past, present and future partnerships, parent companies, affiliates, subsidiaries, divisions, successors, assigns and their respective officers, directors, members, managers (including, without limitation, Cherokee Investment Partners, LLC), attorneys, representatives, agents, employees, advisors, partners, shareholders, spouses, heirs, executors, trustees, and beneficiaries from any and all actual or potential Claims, demands or causes of action of any kind whatsoever, whether accrued or unaccrued, at law or equity, known or unknown, fixed or contingent arising out of or related in any way to the Claims that: (a) were or could have been alleged in the Action; or (b) arise out of, relate to, or result from actual or threatened past, present, or future contamination of the Site. Any release herein shall not be construed to prevent Haskins from enforcing this Agreement.

4.2     Releases by Cherokee

       Except as assigned herein, Cherokee for itself and for anyone claiming by, through or with it, does hereby fully and forever remise, release and discharge Haskins and each of its past, present and future partnerships, parent companies, affiliates, subsidiaries, divisions, successors, assigns and their respective officers, directors, members, managers, attorneys, representatives, agents, employees, advisors, partners, shareholders, spouses, heirs, executors, trustees, and

beneficiaries from any and all actual or potential Claims, demands or causes of action of any kind whatsoever, whether accrued or unaccrued, at law or equity, known or unknown, fixed or contingent arising out of or related in any way to the Claims that: (a) were or could have been alleged in the Action; or (b) arise out of, relate to, or result from actual or threatened past, present, or future contamination of the Site. Any release herein shall not be construed to prevent Cherokee from enforcing this Agreement.

## 5    No Release to Non-Settling Parties

The Settling Parties agree that nothing in this Agreement, including without limitation the releases contained herein, is intended to be, nor shall anything in this Agreement be construed as, a release of any Claim or cause of action or as a covenant not to sue any person or entity not expressly released by paragraphs 4.1 and 4.2. Nothing in this Agreement shall in any way limit, restrict, or impair the rights of the Settling Parties to assert Claims and defenses against any persons or entities who are not expressly released by paragraphs 4.1 and 4.2. Nothing in this Agreement is intended as, should be construed as, or may be argued by any Settling Party to be, a release or covenant not to sue for any Claim or cause of action, administrative or judicial, civil or criminal, past or future, in law or in equity, which Haskins or Cherokee may have against any person, firm, corporation, or other entity not expressly released by paragraphs 4.1 and 4.2.

## 6    Uncertainty of Facts and Law

Each party hereto acknowledges that there is a risk that, subsequent to the execution of this Agreement, it may incur, suffer, or sustain an injury, loss, damages, costs, attorneys' fees, expenses, or any of these, which relate to the Claims and the Action, which are unknown and unanticipated at the time this Agreement is signed, or which are not presently capable of being ascertained, and further that there is a risk that such damages as are known may become more serious than the Settling Parties now expect or anticipate. The Settling Parties further recognize that the law may change or their respective legal rights or remedies may change. Nevertheless, each of the Settling Parties hereto acknowledges that this Agreement has been negotiated and agreed upon in light of these uncertainties and hereby expressly waive any rights that each Settling Party may have in such unsuspected Claims, rights, or damages except as otherwise provided in this Agreement. In doing so, each Settling Party has had the benefit of legal counsel and has been advised of, understands, and knowingly and specifically waives its rights except as otherwise provided in this Agreement, under California Civil Code Section 1542, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO THE CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING A RELEASE WHICH, IF KNOWN BY HIM OR HER, MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

## 7    Scope of this Agreement

It is expressly acknowledged that Settling Parties enter into this Agreement to compromise, settle, and fully resolve any and all Claims by and against each of the Settling Parties as to both liability and damages (specifically including past and future costs, fees, and expenses) related to the environmental contamination at Site, and that this Agreement settles,

resolves, and releases any and all past or present Claims between the Settling Parties regarding the actual, alleged, or threatened environmental contamination at the Site. This Agreement contemplates the termination of the Action as well as all past and present Claims between the Settling Parties arising out of the alleged or threatened contamination at the Site. The terms of this Agreement are not intended to, nor do they create any interest in this settlement to any third party under a third party beneficiary theory or any other theory.

8    Construction of this Agreement

The purpose and intent of this Agreement are to: (1) resolve all disputes between the Settling Parties; and (2) provide funding for the investigation and remediation of the Site. If there is any dispute regarding the terms of this Agreement or its purpose, then this Agreement should be interpreted as to put into effect those purposes recited above. The Settling Parties acknowledge and agree that the drafting of this Agreement has been a joint effort by the Settling Parties, and that this Agreement shall not be deemed prepared or drafted by any one of the Settling Parties. The terms of this Agreement shall be interpreted fairly and in accordance with their intent and not for or against any one of the Settling Parties. This Agreement is the result of extensive adversarial proceedings and good faith, arms-length negotiations facilitated by a mediator and without fraud or collusion by the Settling Parties. The Settling Parties further acknowledge and agree that each of the Settling Parties possesses equal bargaining power with respect to the terms of this Agreement.

9    Good Faith

The Settling Parties agree that if either Settling Party moves the Court for good faith settlement determination under California Code of Civil Procedure sections 877 or 877.6, the other Settling Party will join or otherwise support the good faith motion so long as the moving papers are consistent with this Agreement. The effectiveness of the settlement contained herein is not, however, conditioned or otherwise dependent upon the outcome of such a motion.

10    No Admission of Liability

By entering into this Agreement, the Settling Parties make no admission that they have any liability or obligation to each other or to any other person arising out of or in connection with any environmental contamination at, around or from the Site. The Settling Parties agree that they are entering into this Agreement solely as a business decision for the purposes of settling certain disputes between them and to avoid the cost of further litigation with respect to these disputes. This Agreement is the product of informed negotiations and compromises of previously stated legal positions. Nothing contained in this Agreement shall be construed as an admission by any party as to the merit or lack of merit of any particular theory relating to the payment of Claims arising from or relating to Settling Parties ownership or operations or any other type of Claim. Statements made in the course of negotiations have been and shall be without prejudice to the rights of the parties in any disputes or transactions with any other persons or entities not party to this Agreement.

11    Controlling Law

This Agreement has been negotiated and entered into in the State of California involving a site within this State. The Settling Parties agree that this Agreement shall be governed by and

construed in accordance with, the laws of the United States and of the State of California. No Settling Party shall argue or assert that any law other than California law applies to the governance or construction of this Agreement.

12    Assignment of Claims to the Trust

12.1    Cherokee hereby irrevocably assigns to the Trust all of its rights of recovery under the stipulated judgment against Haskins to be entered into as provided in paragraph 3.1. Cherokee also irrevocably assigns to the Trust such Claims for contribution related to the subject matter of the Action as Cherokee has against third parties unaffiliated with Cherokee, excluding Claims against any of Cherokee's insurers. Cherokee warrants that its rights of recovery against Haskins under the proposed stipulated judgment and the assigned Claims for contribution have not previously been assigned, pledged, encumbered or hypothecated to any other individual or entity. Cherokee shall not release, discharge, pledge, hypothecate, assign, encumber, nor impair or impact by any covenant any rights of recovery against Haskins it may have in the stipulated judgment. The assignment shall include all rights of Cherokee to hold, investigate, assert, negotiate, litigate, resolve, dispose of, or otherwise manage the assigned rights of recovery under the stipulated judgment against Haskins so as to maximize their net value, if any, to the Trust, as deemed appropriate by the trustee of the Trust, in his sole and absolute discretion.

12.2    Proceeds from enforcement of rights under the stipulated judgment and Claims assigned under paragraph 12.1, other than any award of attorney fees or costs, must be deposited by the Trustee in the Trust.

12.3    The declaration of trust for the Trust, executed on August ___, 2013, may not be amended except as expressly provided therein, which requirements for amendment are incorporated herein by reference.

13    Integration

    This Agreement is fully enforceable, binding and subject to disclosure. This Agreement constitutes the final and complete agreement between the Settling Parties regarding settlement of the Action. Any and all prior understandings and agreements in connection with or relating to settlement of the Action, including the Stipulation for Settlement executed in the mediation conducted by the Hon. Alfred G. Chiantelli (ret.) on March 19, 2013, are superseded by this Agreement. Neither Haskins nor Cherokee shall have obligations to the other Settling Party except as set forth in this Agreement. Each of the Settling Parties agrees, represents, and warrants that, in entering into this Agreement, it is not relying upon any representation, promise, understanding, statement or inducement not expressly set forth in this Agreement.

14    Remedies

It is understood that money damages would not be a sufficient remedy for failure of Haskins or Cherokee to perform their respective obligations under this Agreement. Accordingly, the Settling Parties shall be entitled to specific performance and injunctive relief as remedies for any such breach. The remedies of specific performance and injunctive relief for failure to perform obligations under this Agreement shall not be deemed the exclusive remedies for a violation of

the terms of this Agreement, but shall be in addition to all other remedies in this Agreement or otherwise available to the Settling Parties at law or in equity.

## 15    Modification of this Agreement

This Agreement may be amended or supplemented only by a writing that is signed by duly authorized representatives of all of the Settling Parties. No term or provision of this Agreement will be considered waived by either Settling Party, and no breach excused by either Settling Party, unless such waiver or consent is in writing signed on behalf of the Settling Party against whom the waiver is asserted. No consent by either Settling Party to, or waiver of, a breach by either Settling Party, whether express or implied, will constitute a consent to, waiver of, or excuse of any other, different, or subsequent breach by either Settling Party.

## 16    Effect of Partial Invalidity

The terms and conditions of this Agreement are not severable. However, should any provision of this Agreement be declared or determined by any court to be illegal or invalid, (i) the validity of the remaining parts, terms or provisions shall not be affected thereby and said illegal or invalid part, term or provision shall not be deemed to be a part of this Agreement; and (ii) the Parties shall negotiate in good faith to replace the offending language with language which accomplishes as nearly as legally permissible the intent of the original. If agreement cannot be reached after good faith negotiations between the Settling Parties, any Settling Party may petition the Court for a declaration replacing the illegal or invalid language with terms consistent with the purposes described in this Agreement and the Trust, and the Settling Parties shall be bound by that declaration, subject to any right of appeal.

## 17    Counterparts

The Settling Parties agree that separate copies of this Agreement may be signed by each of the Settling Parties and this Agreement will have the same force and effect as if the original had been signed by all the Settling Parties.

## 18    Consideration

This Agreement and the covenants contained herein are supported by the mutual promises and covenants contained herein, which the Settling Parties agree constitute good and valuable consideration.

## 19    Voluntary Undertaking

The Settling Parties acknowledge that they have read this Agreement and are fully aware of the contents of this Agreement and its legal effect. This Agreement is entered into voluntarily and without any coercion by or undue influence on the part of any person, firm, or corporation.

## 20    Independent Legal Advice and Investigation

Each of the Settling Parties affirms and acknowledges that it has read and fully appreciates and understands the words, terms, conditions and provisions of this Agreement, is fully and entirely satisfied with the same, has been represented by legal counsel of its choice in the negotiation, preparation and execution of this Agreement, has conferred with its counsel prior

to the execution of this Agreement concerning the advisability of executing this Agreement and the meaning of California Civil Code Section 1542 and has executed this Agreement voluntarily and of its own free will and act. Each of the Settling Parties, by its execution of this Agreement, represents that it has reviewed each term of this Agreement with its legal counsel, and that hereafter no Settling Party shall deny the validity of this Agreement on the ground that it did not have full and adequate legal counsel. The Settling Parties hereby acknowledge that they have all participated in the drafting of this Agreement, that they are satisfied with the terms incorporated herein, which represent a full and fair settlement, and specifically agree that any rule of construction, to the effect that ambiguities are to be resolved against the drafting party, shall not apply to the interpretation of this Agreement.

21    Inadmissibility of Settlement Communications.

The terms of this Agreement were arrived at in the course of a mediation conducted on March 19, 2013 by the Hon. Alfred G. Chiantelli (ret.). The Settling Parties previously conducted mediation sessions with mediator Jack Skelton. The negotiations leading to this Agreement have been conducted during arm's length and good faith negotiations in reliance upon the provisions of California Evidence Code Sections 1115-1128 and 1152 and Rule 408 of the Federal Rules of Evidence and similar state law provisions in other states that preclude discovery of, or the introduction of evidence regarding, anything said or any admission made in the course of or pursuant to a mediation, or an offer of compromise or conduct or statements made in negotiation of an offer of compromise. With respect to all matters encompassed by this Agreement, the parties hereby reserve all previously-held positions and all other rights in regard to parties not released by this Agreement. Any evidence of such communications or conduct shall not be discoverable or admissible in any litigation. Nothing in this paragraph 21 prevents disclosure of this Agreement or admission of this Agreement into evidence in any proceeding to enforce or interpret its terms.

22    Warranty of Authority

Each Settling Party warrants that the person executing this Agreement on his or its behalf has the authority to do so.

23    Reservation of Jurisdiction

The Settling Parties wish to retain the District Court's jurisdiction to enforce this Agreement. They therefore will request that the Court incorporate this Agreement into its stipulated judgment.

24    Notice

All notices or other communications that any Settling Party desires or is required to give shall be given in writing and shall be deemed to have been given if hand delivered, sent by email and confirmed to have been received, or delivered by certified or registered mail, postage prepaid, return receipt requested the Settling Party at the address noted below or such other address as a Settling Party may designate in writing from time to time:

| | |
|---|---|
| To Haskins: | Richard E. Haskins |
| | 114 South Maple Avenue |
| | South San Francisco, CA 94080 |
| | Telephone: (650) 761-1550 |
| | |
| | Email: Haskinsequip@aol.com |
| | |
| With a Copy To: | Bret A. Stone, Esq. |
| | Paladin Law Group® LLP |
| | 1176 Boulevard Way |
| | Walnut Creek, CA 94595 |
| | Telephone: (925) 947-5700 |
| | |
| | Email: BStone@PaladinLaw.com |
| | |
| To Cherokee: | Bret Batchelder |
| | Cherokee Investment Partners, LLC |
| | 111 East Hargett Street, Suite 300 |
| | Raleigh, NC 27601 |
| | Telephone: (919) 743-2500 |
| | |
| | Email: bbatchelder@cherokeefund.com |
| | |
| With a Copy To: | Stephen McKae, Esq. |
| | Wendel, Rosen, Black & Dean, LLP |
| | 1111 Broadway, 24th Floor |
| | Oakland, CA 94607 |
| | Telephone: (510) 834-6600 |
| | |
| | Email: smckae@wendel.com |
| | |
| With a Copy To: | Garland Graham, Esq. |
| | Schell Bray PLLC |
| | 1500 Renaissance Plaza |
| | 230 North Elm Street |
| | Greensboro, NC 27401 |
| | Telephone: (336) 370-8800 |
| | Email: ggraham@schellbray.com |

EACH OF THE UNDERSIGNED PARTIES HAS READ AND UNDERSTANDS THIS AGREEMENT IN ITS ENTIRETY.

DATED: August ___, 2013        By: _____
                                   Richard E. Haskins

DATED: August ___, 2013        By: _____
                                   Arthur L. Haskins

DATED: August ___, 2013        By: _____
                                   Estate of Arthur "Buzz" Haskins, Deceased

DATED: August ___, 2013        By: _____
                                   Cherokee Grand Avenue LLC

DATED: August ___, 2013        By: _____
                                   Cherokee San Francisco LLC

DATED: August ___, 2013        By: _____
                                   Cherokee Investment Partners II, LP by
                                   Cherokee Investment Partners, LLC, its Manager,
                                   by Bret A. Batchelder, Managing Director

DATED: August ___, 2013        By: _____
                                   Cherokee Acquisition Corp.

Approved as to form:

DATED: August ___, 2013        By:   Paladin Law Group® LLP

                                     _____
                                     Bret A. Stone, Esq.
                                     Attorneys for Plaintiffs Richard E. Haskins, Arthur
                                     L. Haskins, and the Estate of Arthur "Buzz"
                                     Haskins, Jr.

DATED: August ___, 2013        By:   Wendel, Rosen, Black & Dean, LLP

                                     _____
                                     Stephen McKae, Esq.
                                     Attorneys for Defendants Cherokee Grand Avenue
                                     LLC, Cherokee San Francisco LLC, Cherokee
                                     Investment Partners II, LP, and Cherokee
                                     Acquisition Corp.

EACH OF THE UNDERSIGNED PARTIES HAS READ AND UNDERSTANDS THIS
AGREEMENT IN ITS ENTIRETY.

DATED: August ___, 2013     By: _____
                                    Richard E. Haskins

DATED: August ___, 2013     By: _____
                                    Arthur L. Haskins

DATED: August ___, 2013     By: _____
                                    Estate of Arthur "Buzz" Haskins, Deceased

DATED: August ___, 2013     By: _____
                                    Cherokee Grand Avenue LLC

DATED: August ___, 2013     By: _____
                                    Cherokee San Francisco LLC

DATED: August ___, 2013     By: _____
                                    Cherokee Investment Partners II, LP by
                                    Cherokee Investment Partners, LLC, its Manager,
                                    by Bret A. Batchelder, Managing Director

DATED: August ___, 2013     By: _____
                                    Cherokee Acquisition Corp.

Approved as to form:

DATED: August ___, 2013     By:   Paladin Law Group* LLP

                                    _____
                                    Bret A. Stone, Esq.
                                    Attorneys for Plaintiffs Richard E. Haskins, Arthur
                                    L. Haskins, and the Estate of Arthur "Buzz"
                                    Haskins, Jr.

DATED: August ___, 2013     By:   Wendel, Rosen, Black & Dean, LLP

                                    _____
                                    Stephen McKae, Esq.
                                    Attorneys for Defendants Cherokee Grand Avenue
                                    LLC, Cherokee San Francisco LLC, Cherokee
                                    Investment Partners II, LP, and Cherokee
                                    Acquisition Corp.

EACH OF THE UNDERSIGNED PARTIES HAS READ AND UNDERSTANDS THIS
AGREEMENT IN ITS ENTIRETY.

DATED: August __, 2013      By: _____
                                 Richard E. Haskins

DATED: August __, 2013      By: _____
                                 Arthur L. Haskins

DATED: August __, 2013      By: _____
                                 Estate of Arthur "Buzz" Haskins, Deceased

DATED: August 1, 2013       By: _____ President
                                 Cherokee Grand Avenue LLC

DATED: August 1, 2013       By: _____ President
                                 Cherokee San Francisco LLC

DATED: August 1, 2013       By: _____ Managing Director
                                 Cherokee Investment Partners II, LP by
                                 Cherokee Investment Partners, LLC, its Manager,
                                 by Bret A. Batchelder, Managing Director

DATED: August 1, 2013       By: _____ Managing Member of
                                 Cherokee Acquisition Corp.  Managing Member

Approved as to form:

DATED: August __, 2013      By:  Paladin Law Group® LLP

                                 _____
                                 Bret A. Stone, Esq.
                                 Attorneys for Plaintiffs Richard E. Haskins, Arthur
                                 L. Haskins, and the Estate of Arthur "Buzz"
                                 Haskins, Jr.

DATED: August 1, 2013       By:  Wendel Rosen, Black & Dean, LLP

                                 _____
                                 Stephen McKae, Esq.
                                 Attorneys for Defendants Cherokee Grand Avenue
                                 LLC, Cherokee San Francisco LLC, Cherokee
                                 Investment Partners II, LP, and Cherokee
                                 Acquisition Corp.

EACH OF THE UNDERSIGNED PARTIES HAS READ AND UNDERSTANDS THIS
AGREEMENT IN ITS ENTIRETY.

DATED: August __, 2013     By:    _____
           Richard E. Haskins

DATED: August __, 2013     By:    _____
           Arthur L. Haskins

DATED: August __, 2013     By:    _____
           Estate of Arthur "Buzz" Haskins, Deceased

DATED: August __, 2013     By:    _____
           Cherokee Grand Avenue LLC

DATED: August __, 2013     By:    _____
           Cherokee San Francisco LLC

DATED: August __, 2013     By:    _____
           Cherokee Investment Partners II, LP by
           Cherokee Investment Partners, LLC, its Manager,
           by Bret A. Batchelder, Managing Director

DATED: August __, 2013     By:    _____
           Cherokee Acquisition Corp.

Approved as to form:

DATED: August _1_, 2013     By:    Paladin Law Group® LLP

           _____
           Bret A. Stone, Esq.
           Attorneys for Plaintiffs Richard E. Haskins, Arthur
           L. Haskins, and the Estate of Arthur "Buzz"
           Haskins, Jr.

DATED: August __, 2013     By:    Wendel, Rosen, Black & Dean, LLP

           _____
           Stephen McKae, Esq.
           Attorneys for Defendants Cherokee Grand Avenue
           LLC, Cherokee San Francisco LLC, Cherokee
           Investment Partners II, LP, and Cherokee
           Acquisition Corp.

# APPENDIX A

## DECLARATION OF TRUST FOR
## THE SAN BRUNO CHANNEL REMEDIATION TRUST

# DECLARATION OF TRUST FOR
## THE SAN BRUNO CHANNEL REMEDIATION TRUST

This Declaration of Trust for the San Bruno Channel Remediation Trust is entered into by Haskins as a result of a settlement between Haskins and Cherokee.

1    <u>Definitions</u>

Words used in this Trust Declaration are to be taken and understood in their normal and ordinary sense, unless this Trust Declaration indicates that a different meaning is intended. Whenever the following terms, appearing in bold, are used in this Trust Declaration, the meanings of this section apply.

1.1    "**Action**" means the lawsuit pending in the United States District Court, Northern District of California, entitled *Richard E. Haskins, et al. v. Cherokee Grand Avenue LLC, et al.*, Case No. C-11-05142-JST, including all counterclaims and cross-claims.

1.2    "**Business Day**" means a day on which commercial banks are not authorized or required to close in San Francisco, California.

1.3    "**Cherokee**" means Cherokee Grand Avenue LLC, Cherokee San Francisco LLC, Cherokee Investment Partners II, LP, and Cherokee Acquisition Corp.

1.4    "**Court**" means the United States District Court, Northern District of California, San Francisco in the Action.

1.5    "**Court Order**" means the order of the United States District Court, Northern District of California which approves the creation of the Trust.

1.6    "**Effective Date**" means the date of the Court Order approving the creation of the Trust.

1.7    "**Fund II**" means Cherokee Investment Partners II, LP or a liquidating trust or similar entity designated by Fund II in writing to act on its behalf with respect to Fund II's affairs.

1.8    "**Haskins**" refers to Richard E. Haskins, Arthur L. Haskins, and the Estate of Arthur "Buzz" Haskins, Jr.

1.9    "**Property**" means the real property located at 500 East Jamie Court, South San Francisco, California, APN 015-102-34.

1.10    "**San Bruno Channel Remediation Trust**" or "**Trust**" means the entity to be created pursuant to this Trust Declaration upon entry of the Court Order.

1.11    "**Settlement Agreement**" refers to the Settlement Agreement and Release between Haskins and Cherokee executed on or about August 1, 2013 in the Action. The Settlement

Agreement is attached as Appendix A to this Trust Declaration and incorporated herein by reference.

1.12 "Settling Parties" refers to Haskins and Cherokee.

1.13 "Settling Party" means one of the Settling Parties.

1.14 "Site" means the Property and any place where environmental contamination of any type or nature is alleged to have migrated to or from the Property.

1.15 "Site Closure" means issuance of a writing by the regulatory agency with jurisdiction over the remedial efforts that no further remedial action is required at the Site.

1.16 "Transferor" mean a person or entity who qualifies as a "transferor" under 26 C.F.R. Section 1-468B(d)(2).

1.17 "Trust" means the San Bruno Channel Remediation Trust.

1.18 "Trust Declaration" means this Declaration of Trust for the San Bruno Channel Remediation Trust.

1.19 "Trustee" means Richard E. Haskins, or any successor trustee.

1.20 "Trustors" means Richard E. Haskins and Arthur L. Haskins or the survivor of them.

2    Recitals

2.1    WHEREAS, the Trust will be established by Court Order approving this Trust Declaration.

2.2    WHEREAS, Trustors wish to appoint the Trustee, and the Trustee wishes to be appointed as trustee of the Trust in accordance with the terms of this Trust Declaration;

2.3    WHEREAS, Trustors intend that the Trust constitutes a trust organized under California law, particularly California Probate Code Section 15200;

2.4    WHEREAS, the Trust is being established to resolve or satisfy one or more contested or uncontested claims that have resulted or may result from an event (or related series of events) that has occurred and that has given rise to at least one claim asserting liability for environmental damages or arising out of a tort, breach of contract, or violation of law;

2.5    WHEREAS, funds and assets deposited in the Trust will be for the sole purpose of implementing investigative and remedial actions at the Site under a corrective measures workplan approved by the San Francisco Regional Water Quality Control Board;

2.6    WHEREFORE, in order to effectuate the purposes of this Trust Declaration and to comply with the requirements of the United States of America and the State of California regarding qualified settlement funds and trusts, Trustors and Trustee enter into this Trust Declaration.

## 3    Terms of this Trust Declaration

3.1    _Parties Bound._  This Trust Declaration shall apply to and be binding upon the Trustee and Trustors, and all their successors and assigns.  The undersigned representatives of Trustors certify that they are fully authorized by Trustors to enter into the terms and conditions of this Trust Declaration, to execute this Trust Declaration, and to legally bind Trustors.

3.2    _Name of the Trust._  The name of the Trust shall be the San Bruno Channel Remediation Trust.

3.3    _Purposes of the Trust._  The purposes of the Trust are as follows:

3.3.1    To collect and disburse amounts for environmental investigation and remediation (as defined in 26 C.F.R. Section 301.7701- 4(e)(1)) of the Site to resolve, satisfy, mitigate, address, or prevent the liability or potential liability of persons imposed by federal, state, or local environmental laws.

3.3.2    To comply fully with the requirements of this Trust Declaration and all applicable provisions of California law, including, but not limited to California Probate Code Sections 15000 _et seq._ and 16000 _et seq._; and

3.3.3    To make, sign, execute, acknowledge and deliver any and all contracts or agreements in furtherance of the purposes of this Trust Declaration, including, but not limited to:

3.3.3.1 Contracts for professional services;

3.3.3.2 Contracts for the investigation or remediation of the Site; and

3.3.3.3 Contracts to pursue enforcement of assigned Claims held by the Trust.

3.4    _Corpus of the Trust._  Concurrently with the execution of this Trust Declaration, Trustors shall take steps to insure that the transfer to the Trust of the assets listed in Appendix B to this Trust Declaration occurs as provided in paragraphs 3.3 through 3.5, inclusive, of the Settlement Agreement and in paragraph 4 of the Escrow Agreement attached as Appendix C to this Trust Declaration, so that these amounts are held and administered as provided in this Trust Declaration and the terms of the Settlement Agreement.  Cherokee and Trustors shall have no obligation for funding the Trust except as expressly provided in paragraphs 3.3 through 3.5, inclusive, of the Settlement Agreement.

3.5     Disbursement and Expenditure of Funds.  During the term of this Trust Declaration, the Trustee shall make disbursements, distributions, transfers or rebates from the Trust consistent with the purposes of this Trust Declaration and the terms of the Settlement Agreement.  The Trustee shall be authorized to release funds from the remediation trust only for reasonable and necessary expenses to respond to regulatory requirements and for work performed under a corrective measures workplan approved by the San Francisco Regional Water Quality Control Board or for professional services required for routine administration of the Trust as provided in paragraph 3.14.2. The Trustee shall make such payments solely from funds on deposit in the Trust and shall have no obligation to make any payments if sufficient funds are not available in the Trust.  Trustors may advance funds to the Trust in order to achieve the Trust's purposes and shall be entitled to reimbursement of those advanced funds, subject to paragraph 3.8 herein.

3.6     Tax Matters.

3.6.1   It is the intention of Trustors that the Trust be treated as a qualified settlement fund pursuant to 26 Code of Federal Regulations ("C.F.R.") Section 1.468B-1 *et seq*.

3.6.2   For federal and state tax purposes any earnings, losses, fees and expenses of the Trust are to be reported for tax purposes as attributable to the Trust.

3.6.3   The Trustee shall file the applicable federal and state tax forms on the earnings and expenses of the Trust.

3.6.4   The Trustee and Trustors shall jointly elect to apply the applicable Treasury Regulations, including 26 C.F.R. Sections 1.468B-1 through 1.468B-5, to the Trust.  Accordingly, in addition to those other requirements relating thereto, the Trustee shall elect to apply settlement fund rules, if appropriate, under 26 C.F.R. Section 1.468B-5(b)(2), by the filing of a "Section 1.468-5(b)(2) Election."

3.6.5   The Trustee shall be deemed to be the "administrator" within the meaning of 26 C.F.R. Section 1.468B-2(k)(3).

3.6.6   It is further intended that transfers to the Trust by a Transferor will satisfy the "all events test" and the "economic performance" requirement, and that no transfer of funds by a Settling Party or Transferor shall be taxable on the gross income of the Trust.

3.6.7   The Trust shall be subject to tax payable on the modified gross income of the Trust which will not include the sums transferred to it from any Transferor.  In computing the Trust's modified gross income, deductions will be allowed for, *inter alia*, administrative costs and other incidental deductible expenses incurred in connection with the operation of the Trust, including without limitation, state and local taxes relating to the operation of the Trust.

3.6.8   Upon the establishment of the Trust and in accordance with 26 C.F.R. Section 1.468B-2(k)(4), the Trustee shall apply for an Employer Identification Number for the Trust pursuant to Internal Revenue Service Form SS-4.

3.6.9 In accordance with the provisions of 26 C.F.R. Section 1.468B-2(k)(1), the Trustee shall cause to be filed, on behalf of the Trust, all required federal, state, and local tax returns, and may retain an independent, certified public accountant to consultant with and advise the Trustee with respect to the preparation of such returns.

3.6.10 Each Transferor shall supply to the Trustee and to the Internal Revenue Service the statement described in 26 C.F.R. Section 1.468B-3(e)(2), upon a timely request of the Trustee and no later than February 15 of the year following each calendar year in which such Transferor (or some other person on behalf of such Transferor) makes a transfer to the Trust.

3.6.11 In accordance with 26 C.F.R. Section 1.468B(2)(j), the taxable year of the Trust shall be the calendar year and the Trust shall use an accrual method of accounting within the meaning of Section 446(c) of the Internal Revenue Code, 26 U.S.C. Section 446(c).

3.6.12 Anything contained in this Trust Declaration notwithstanding, the Trustee may take all such actions deemed necessary to comply with the applicable laws in order to assure that the Trust is treated as a "Qualified" settlement fund under Section 468B of the Internal Revenue Code, 26 U.S.C. Section 468B, and the regulations promulgated thereunder and codified at 26 C.F.R. Section 1.468B-1, including such actions as may be inconsistent with those expressly set forth in this Trust Declaration.

3.6.13 The Trustee may amend, either in whole or in part, any administrative provision of this Trust Declaration which causes unanticipated tax consequences or liabilities inconsistent with the foregoing, or conform the administrative provisions of this Trust Declaration to the requirements of the taxing authorities with the consent of Fund II, as provided by paragraph 3.9.1. The Trustee is, therefore, expressly authorized to enter into any agreements and to execute any documents that will, in the discretion of the Trustee and in a manner consistent with this Trust Declaration and the Settlement Agreement, tend to minimize the taxes resulting from the Trust or minimize the consequences of noncompliance with the intent of this section.

3.7 No Authority to Conduct Business. The purposes of the Trust are limited to those purposes set forth in Section 3.3 of this Trust Declaration. This Trust Declaration does not confer upon the Trustee any authority to conduct business which is not expressly authorized by this Trust Declaration.

3.8 Winding Down and Termination of the Trust.

3.8.1 The Trust shall continue until Site Closure is achieved and required post-closure monitoring is concluded. Upon receipt of Site Closure, the Trustee may satisfy the requirement for providing for post-closure monitoring by entering into one or more contracts for conducting that monitoring and by reserving sufficient funds to cover one hundred fifty percent (150%) of the cost of paying for performance under those agreements through completion of post-closure monitoring. The balance in excess of this reserve may be distributed according to paragraph 3.8.3.

3.8.2   The Trust shall terminate when required post-closure monitoring is completed.

3.8.3   Upon satisfaction of the conditions in paragraph 3.8.1, the Trustee may distribute assets in excess of the reserve for post-closure monitoring to reimburse the costs of funding, managing, and supervising the Trust not payable under paragraphs 3.5 and 3.14.2.  Upon termination of the Trust, the Trustee shall distribute the remaining assets of the Trust, if any, as designated in writing by Trustors to reimburse the costs of funding, managing, and supervising the Trust not payable under paragraphs 3.5 and 3.14.2.

3.9   Integration, Alterations, Amendments and Revocation.

3.9.1   This Trust Declaration may be altered, amended or revoked only by a subsequent instrument in writing executed by the Trustee and Trustors with the written consent of Fund II after providing notice to the Court of the intended modification.  Fund II will be deemed to have given its consent to a proposed amendment which the Trustee delivers to Fund II in the manner provided in paragraph 3.18.1 if, within sixty (60) calendar days following receipt, Fund II does not deliver to the Trustee in the manner provided in paragraph 3.18.1 a written objection to the amendment.  No particular form is required for asserting an objection under this paragraph.

3.9.2   No such alteration, amendment or revocation may conflict with or modify in any respect the obligations under the Settlement Agreement.

3.10   Designation of Trustee.  The Trust shall be administered by a Trustee.  The initial Trustee will be Richard E. Haskins.

3.11   Authority of the Trustee.

3.11.1   The Trustee shall determine whether this Trust Declaration has been fully implemented.

3.11.2   Until such time as this Trust Declaration has been fully implemented, the Trustee shall issue instructions for payments from the Trust exclusively to pay for the fees, costs, and expenses of implementing the purposes of this Trust Declaration.

3.12   Investment.  The Trustee shall invest and reinvest the principal and income of the Trust, each of which shall be treated as a single fund without distinction between principal and income, in order to protect the corpus of the Trust.  Such investments shall take into account the need for the protection of principal and sufficient liquidity to meet the anticipated cash needs of the Trust.

3.13   Trustee Statements.

3.13.1   The Trustee shall submit to Trustors and Fund II by the fifth (5th) Business Day of May of each year an annual activity report with respect to the Trust for the year, starting in the month of January.  There is no obligation for the Trustee to obtain audited annual activity reports.

3.13.2   The Trustee shall provide to Trustors and Fund II a final accounting with respect to the

Trust by the thirtieth (30th) Business Day after termination of the Trust.

3.13.3 Upon demand from Trustors or Fund II at any time, the Trustee shall provide an accounting of all activity with respect to the Trust since its inception. The Settling Party requesting the accounting will pay for the cost of the accounting unless a court determines in a proceeding to remove and surcharge the Trustee that the cost of the accounting should be borne by the Trustee or a third party.

3.14   Responsibilities and Reliance of Trustee.

3.14.1 The Trustee shall not have any duties or responsibilities except those expressly set forth in this Trust Declaration and no implied covenant, functions, responsibilities or duties on the part of the Trustee shall be read into this Trust Declaration or otherwise exist against the Trustee.

3.14.2 The Trustee may employ accountants, bookkeepers, brokers, attorneys, investment advisers, custodians, corporate fiduciaries and others whose services are in the Trustee's discretion necessary or convenient to the administration of the trust created herein. Reasonable compensation for all services performed by these agents may be paid from the Trust. Provided, that the Trustee shall have no authority to pay from the Trust for legal services (i) for enforcement of any judgment or claim described in Appendix B or (ii) representing any Settling Party in any dispute concerning liability of the Settling Parties with any regulatory or permitting agency.

3.14.3 The Trustee shall be entitled to rely and shall be protected in acting upon any certificate, notice or other document (including any facsimile or e-mail) believed by it to be genuine and correct and to have been signed by the proper person or persons.

3.15   Trustee Compensation.

3.15.1 The Trustee shall serve without compensation.

3.15.2 The Trustee shall have a first priority lien upon and right of set-off against the assets of the Trust for fees and expenses not paid in a timely manner.

3.15.3 The Trustee shall have no recourse against the Settling Parties for payment of fees and expenses.

3.16   Resignation or Removal of Trustee; Successor Trustee.

3.16.1 The Trustee may resign at any time by delivering a resignation in writing to Trustors. Trustors may remove the Trustee at any time by delivering notice of such removal in writing to the Trustee. Such resignation or removal will take effect upon the earlier of: (1) sixty (60) days after delivery of the notice of resignation or removal; or (2) the acceptance of appointment in writing by a successor Trustee. Notice of the resignation or removal of Trustee shall be given by Trustors within five (5) calendar days of delivery of the resignation or notice of removal to Fund

II and the Escrow Holder designated in the Escrow Agreement attached as Appendix C to this Trust Declaration. Notice to the Escrow Holder shall be accomplished as provided in Appendix C.

3.16.2 A successor Trustee shall be appointed by Trustors upon the resignation or removal of the Trustee, with such appointment to be effective immediately following the effective date of the resignation or removal of the prior Trustee.

3.16.3 Acceptance of appointment as a successor Trustee shall be in writing and shall become effective upon the mailing to Trustors and the Court of notice of such acceptance. Notice of appointment of a successor Trustee shall be given by Trustors within five (5) calendar days of acceptance of the appointment to Fund II and the Escrow Holder designated in the Escrow Agreement attached as Appendix C to this Trust Declaration. Notice to the Escrow Holder shall be accomplished as provided in Appendix C.

3.16.4 Each successor Trustee shall have all of the rights, powers, duties, authority and privileges as if initially named as the Trustee under this Trust Declaration. Upon the acceptance of appointment of any successor Trustee, the previous Trustee shall deliver all assets, documentation and other property of the Trust in its possession, custody or control to such successor Trustee. After selection of a successor Trustee, the previous Trustee shall reasonably cooperate in meeting any reasonable request for information or other assistance made by the successor Trustee to the previous Trustee with respect to any matter subject to this Trust Declaration.

3.17    Immunity and Indemnification. Limitation on Liability of Trustee.

3.17.1 In respect of any contract, obligation or liability made or incurred by the Trustee in performing his duties hereunder, all persons shall look solely to the Trust and not the Trustee (except for any liability resulting from the Trustee's willful misconduct), nor any of the Trustee's directors, officers, employees or authorized representative, personally.

3.17.2 The Trustee shall not incur any liability, personal or corporate, of any nature in connection with any act or omission, unless involving its willful misconduct, in the administration of the Trust or otherwise pursuant to the Trust.

3.17.3 The Trustee shall have no personal responsibility with respect to management or performance of any environmental remediation, the payment of any costs of remedial or removal action, damages, penalties, fines, taxes or other expenses related to the compliance by Trustee with this Trust Declaration or to conduct any duties other than the express duties explicitly set forth in this Trust Declaration with respect to the Trust.

3.18   Notices under this Trust Declaration.

3.18.1 All notices or other communications relating to this Trust shall be given in writing and shall be deemed to have been given if hand delivered, sent by email and confirmed to have been received, or delivered by certified or registered mail, postage prepaid, return receipt requested the Settling Party at the address noted below or such other address as a Settling Party may designate in writing from time to time; provided that communications to the Trustee shall not be effective until receipt:

To Trustors:

Richard E. Haskins
114 South Maple Avenue
South San Francisco, CA  94080
Telephone:     (650) 761-1550
Email:  Haskinsequip@aol.com

With a Copy To:

Bret A. Stone, Esq.
Paladin Law Group® LLP
1176 Boulevard Way
Walnut Creek, CA  94595
Telephone:     (925) 947-5700
Email:  BStone@PaladinLaw.com

To Trustee:

Richard E. Haskins
114 South Maple Avenue
South San Francisco, CA  94080
Telephone:  (650) 761-1550
Email:  Haskinsequip@aol.com

To Cherokee or Fund II:

Bret Batchelder
Cherokee Investment Partners, LLC
111 East Hargett Street, Suite 300
Raleigh, NC  27601
Telephone:  (919) 743-2500
Email:  bbatchelder@cherokeefund.com

With a Copy To:              Stephen McKae, Esq.
Wendel, Rosen, Black & Dean, LLP
1111 Broadway, 24th Floor
Oakland, CA 94607
Telephone: (510) 834-6600
Email: smckae@wendel.com

With a Copy To:              Garland Graham, Esq.
Schell Bray PLLC
1500 Renaissance Plaza
230 North Elm Street
Greensboro, NC 27401
Telephone: (336) 370-8800
Email: ggraham@schellbray.com

3.19    Interest Not Assignable or Subject to Claims of Creditors. No Settling Party shall be deemed to have any interest in the Trust that may be subject to anticipation or assignment or subject to the claims of any creditor of any Settling Party. The foregoing notwithstanding, the Trustee shall have authority to appoint an agent for collection on the Judgment and Claims assigned by Cherokee to the Trust as provided in paragraph 3.3 of the Settlement Agreement.

3.20    Successors and Assigns. This Trust Declaration shall be binding upon the Trustee and Trustors.

3.21    Choice of Law. This Trust Declaration shall be administered, construed and enforced in accordance with and governed by the laws of the State of California. The venue for any dispute concerning this Trust Declaration shall be in the Court pursuant to the Court Order.

3.22    Rights and Obligations of Settling Parties. Except for a Settling Party's obligations and undertakings as set forth in Section 3.4 of this Trust Declaration, a Settling Party shall have absolutely no obligations to take any action with respect to the Trust, nor shall a Settling Party have any rights with respect thereto, except as may be expressly set forth in this Trust Declaration.

3.23    Interpretation.

3.23.1 As used in this Trust Declaration, words in the singular include the plural and words in the plural include the singular, and the masculine and neuter genders shall be deemed to include the masculine, feminine and neuter.

3.23.2 The descriptive heading for each Section and Subsection of this Trust Declaration shall not affect the interpretation or the legal efficacy of this Trust Declaration.

3.23.3 It is agreed that neither the act of entering into this Trust Declaration nor any contribution to the Trust nor any action taken under this Trust Declaration shall be deemed to constitute an

admission of any liability or fault on the part of the Settling Parties, nor does it constitute a commitment or agreement, either expressed or implied, by any or all of them to undertake any further activities with respect to the Site.

3.24    Third Parties.  Except as expressly provided in this Trust Declaration or the Court Order, nothing contained in this Trust Declaration shall be construed to create any rights in any person or entity not a party to this Trust Declaration.

3.25    Severalty of Provisions.  If any provision of this Trust Declaration or its application to any person or entity or in any circumstance shall be invalid or unenforceable, the application of such provision to persons or entities an in circumstances other than those as to which it is invalid or unenforceable, and the other provisions of this Trust Declaration, shall not be affected by such invalidity or unenforceability.

3.26    Entire Agreement.  This Trust Declaration contains the entire agreement and its terms are contractual, not a mere recital.

EACH OF THE UNDERSIGNED PARTIES HAS READ AND UNDERSTANDS THE FOREGOING DOCUMENT IN ITS ENTIRETY AND AGREE TO ITS TERMS.

DATED: August _1_, 2013        By: _____
                                    Richard E. Haskins, Trustee

DATED: August _1_, 2013        By: _____
                                    Richard E. Haskins, Trustor

DATED: August _1_, 2013        By: _____
                                    Arthur L. Haskins, Trustor

admission of any liability or fault on the part of the Settling Parties, nor does it constitute a commitment or agreement, either expressed or implied, by any or all of them to undertake any further activities with respect to the Site.

3.24 Third Parties. Except as expressly provided in this Trust Declaration or the Court Order, nothing contained in this Trust Declaration shall be construed to create any rights in any person or entity not a party to this Trust Declaration.

3.25 Severality of Provisions. If any provision of this Trust Declaration or its application to any person or entity or in any circumstance shall be invalid or unenforceable, the application of such provision to persons or entities an in circumstances other than those as to which it is invalid or unenforceable, and the other provisions of this Trust Declaration, shall not be affected by such invalidity or unenforceability.

3.26 Entire Agreement. This Trust Declaration contains the entire agreement and its terms are contractual, not a mere recital.

EACH OF THE UNDERSIGNED PARTIES HAS READ AND UNDERSTANDS THE FOREGOING DOCUMENT IN ITS ENTIRETY AND AGREE TO ITS TERMS.

DATED: August ___, 2013          By: _____
                                      Richard E. Haskins, Trustee


DATED: August ___, 2013          By: _____
                                      Richard E. Haskins, Trustor


DATED: August ___, 2013          By: _____
                                      Arthur L. Haskins, Trustor

# APPENDIX A

## SETTLEMENT AGREEMENT

# SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release, as of the Effective Date, is entered into between plaintiffs Richard E. Haskins, Arthur L. Haskins, and the Estate of Arthur "Buzz" Haskins, Jr. (collectively, "Haskins") and defendants Cherokee Grand Avenue LLC, Cherokee San Francisco LLC, Cherokee Investment Partners II, LP, and Cherokee Acquisition Corp. (collectively, "Cherokee"). Haskins and Cherokee are referred to herein collectively as "Settling Parties" and individually as "Settling Party."

1       Background

WHEREAS Haskins is the owner of the real property located at 500 East Jamie Court, South San Francisco, California, APN 015-102-34 ("Property").

WHEREAS a paint manufacturing factory was located to the north of the Property from approximately 1898 to approximately 1995;

WHEREAS Cherokee Acquisition Corp., Cherokee San Francisco LLC, and Cherokee Grand Avenue LLC purchased the real property consisting of the paint manufacturing factory in 1999, performed an environmental cleanup, obtained approval for closure of the cleanup from government agencies, and then sold it in 2000;

WHEREAS environmental investigations conducted at the Site have shown that the Property is contaminated with heavy metals and semi-volatile organics;

WHEREAS Haskins filed an action in order to avoid or minimize its alleged liability associated with responding to the contamination and to preserve its claims against Cherokee from being barred by the applicable statutes of limitations. The action filed in the United States District Court, Northern District of California, entitled *Richard E. Haskins, et al. v. Cherokee Grand Avenue LLC, et al.*, Case No. C-11-05142-JST, alleged that the historical paint manufacturing operations contributed to the contamination at the Site;

WHEREAS Cherokee filed a counterclaim against Haskins in the Action alleging that Haskins caused or contributed to the contamination and was responsible for the past and future costs associated with the cleanup of the Property;

WHEREAS Settling Parties deny any allegation of liability with respect to the contamination;

WHEREAS this Agreement is intended to resolve the liability of Settling Parties;

WHEREAS the Settling Parties wish to avoid the expense and disruption of litigation over the issue of their alleged liability for the contamination and the Settling Parties are prepared to settle their differences strictly as a business decision with respect to all such claims and without prejudice to their respective positions on liability in the Action, or in any other dispute, arising out of or relating in any way to the investigation and/or remediation of environmental contamination at the Site;

NOW, THEREFORE, in consideration of the mutual promises set forth in this Agreement, and for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as to the terms and conditions as follows:

2      Definitions

Words used in this Agreement are to be taken and understood in their normal and ordinary sense, unless this Agreement indicates that a different meaning is intended. Whenever the following terms are used in this Agreement, the meanings of this section apply.

2.1    "Action" means the lawsuit pending in the United States District Court, Northern District of California, entitled *Richard E. Haskins, et al. v. Cherokee Grand Avenue LLC, et al.*, Case No. C-11-05142-JST, including all counterclaims.

2.2    "Agreement" means this Settlement Agreement and Release.

2.3    "Claims" means any right or cause of action, including but not limited to counterclaims, cross-claims, actions, demands, rights, liabilities, and obligations of every kind and nature and under any and all legal theories, including notices of partial or total responsibility (including Potential Responsible Party or "PRP" notices), whether known or unknown, past or present, suspected or unsuspected, liquidated or unliquidated, relating to the Site, including, without limitation, claims for:

2.3.1         any past or present fees, attorneys' fees, costs, expenses, and liabilities incurred or which may be incurred for testing, investigating, remediating, removing, neutralizing, detoxifying, monitoring, containing, cleaning up, treating, or in any way responding to environmental contamination in soil, groundwater, surface water, equipment, or any other items that now exist or in the past existed at, on, under, or emanating from the Site, including without limitation, responding to and defending against any request, directive, order or lawsuit by any past or present regulatory agency, the California Regional Water Quality Control Board, the United States Environmental Protection Agency, other federal, state, local or other governmental or quasi-governmental agencies and/or private persons, organizations or entities relating to the Site;

2.3.2         damages of any kind, including compensatory and punitive damages, or other legal, statutory, or equitable relief for or relating to bodily injury, personal injury, property damage, cleanup, remediation or any other harm, injury, damage or violation or need for remedy of any kind, and/or any other claim, demand, or cause of action, arising out of the Settling Parties' alleged, actual, threatened, potential or vicarious acts, omissions, liability, or responsibility (including, but not limited to, alleged liability or responsibility as a generator, disposer, manufacturer, distributor, transporter, or operator), whether at law or in equity, arising out of or involving (a) alleged, actual, threatened or potential pollution, contamination or other alleged injurious environmental or toxic condition, (b) alleged, actual, threatened or potential exposure to or presence of tar, hydrocarbons, smoke, vapors, odors, noise, soot, fumes, acids, alkalis, toxic chemicals, solids, liquids or gases, waste, recycled or recyclable materials or alleged irritants, contaminants or pollutants, or (c) alleged, actual, threatened or

potential exposure to or presence of injurious environmental or toxic conditions, by any form of allegedly harmful, toxic, radioactive, nuclear, hazardous or injurious substance or material (including, but not limited to, any "hazardous substance" or "hazardous waste" as those terms are defined in 42 U.S.C. §9601); and

2.3.3    any fees, attorneys' fees, costs, expenses, and/or other liabilities arising from, sought in, or relating to the Action or the settlement of the Action.

2.4    "Court" means the United States District Court, Northern District of California.

2.5    "Effective Date" means the date Court established the Trust.

2.6    "Fund II" means Cherokee Investment Partners II, LP or a liquidating trust or similar entity designated by Fund II in writing to act on its behalf with respect to Fund II's affairs.

2.7    "RWQCB" means the San Francisco Bay Regional Water Quality Control Board.

2.8    "Settlement Proceeds" means those assets paid or assigned by Settling Parties as the consideration for this Agreement as described in Section 3, below.

2.9    "Site" means the Property and any place where environmental contamination of any type or nature is alleged to have migrated to or from the Property.

2.10    "Trust" means the San Bruno Channel Remediation Trust, a copy of which is attached as Appendix A to this Agreement and incorporated herein by reference. The purpose of the Trust is to collect and disburse amounts for environmental investigation and remediation (as defined in 26 C.F.R. Section 301.7701-4(e)(1)) of the Site to resolve, satisfy, mitigate, address, or prevent the liability or potential liability of persons imposed by federal, state, or local environmental laws.

3    Settlement Proceeds

In consideration of the agreements and covenants contained within this Agreement, Settling Parties shall make the following payments or assignments to the Trust or provide the following consideration:

3.1    Haskins shall stipulate to a judgment in favor of Cherokee of $1,700,000 ($23,000 for past costs and the remaining amount for future costs) on Cherokee's counterclaim and to dismissal with prejudice of Haskins' claims against Cherokee. The stipulation for judgment shall provide that the judgment is not executable against Haskins' personal or business assets, other than insurance assets.

3.2    Richard Haskins agrees to serve as the initial trustee of the Trust without compensation.

3.3    Cherokee shall assign to the Trust as provided in paragraph 12 of this Agreement (i) its judgment against Haskins; and (ii) such Claims for contribution related to the subject matter of the Action as Cherokee has against third parties unaffiliated with Cherokee, excluding Claims against any of Cherokee's insurers. If any claim is not assignable, then

the proceeds of those claims shall be assigned to the Trust and the Trustee shall be appointed as the attorney in fact to pursue enforcement and recover the assigned claims and proceeds of the assigned claims. The pursuit of such claims by the Trustee as attorney-in-fact shall be at the sole cost and expense of the Trustee.

3.4     Thirty (30) days following entry of judgment, Fund II will deposit the amount of One Hundred Fifty Thousand Dollars ($150,000) into an attorney trust account selected by Cherokee with instructions to be approved by the Settling Parties for release of funds to the Trust upon satisfaction of the condition in paragraph 3.5. At Fund II's election, the account may be non-interest bearing. Interest, if any, shall be applied as required by state law for attorney trust accounts.

3.5     Upon deposit by Haskins of One Million Two Hundred Thousand Dollars ($1,200,000), cumulatively and in one or more installments, into the Trust within five (5) years following entry of judgment from any source (including Haskins' own funds), One Hundred Fifty Thousand Dollars ($150,000) from the account described in paragraph 3.4 shall be released from the attorney trust account into the trust according to the approved instructions, and the balance of the attorney trust account, if any, will be released to Fund II. If a deposit by Haskins of One Million Two Hundred Thousand Dollars ($1,200,000) is not made into the Trust within five (5) years following entry of judgment, all funds in the attorney trust account will be released to Fund II and Cherokee shall have no further obligation to contribute funds to the Trust.

3.6     Haskins will comply with the covenants and conditions of the Declaration of Trust for the San Bruno Channel Remediation Trust attached hereto as Appendix A.

4     <u>Mutual Releases</u>

4.1     <u>Releases by Haskins</u>

       Haskins for itself and for anyone claiming by, through or with it, does hereby fully and forever remise, release and discharge Cherokee and each of its past, present and future partnerships, parent companies, affiliates, subsidiaries, divisions, successors, assigns and their respective officers, directors, members, managers (including, without limitation, Cherokee Investment Partners, LLC), attorneys, representatives, agents, employees, advisors, partners, shareholders, spouses, heirs, executors, trustees, and beneficiaries from any and all actual or potential Claims, demands or causes of action of any kind whatsoever, whether accrued or unaccrued, at law or equity, known or unknown, fixed or contingent arising out of or related in any way to the Claims that: (a) were or could have been alleged in the Action; or (b) arise out of, relate to, or result from actual or threatened past, present, or future contamination of the Site. Any release herein shall not be construed to prevent Haskins from enforcing this Agreement.

4.2     <u>Releases by Cherokee</u>

       Except as assigned herein, Cherokee for itself and for anyone claiming by, through or with it, does hereby fully and forever remise, release and discharge Haskins and each of its past, present and future partnerships, parent companies, affiliates, subsidiaries, divisions, successors, assigns and their respective officers, directors, members, managers, attorneys, representatives, agents, employees, advisors, partners, shareholders, spouses, heirs, executors, trustees, and

beneficiaries from any and all actual or potential Claims, demands or causes of action of any kind whatsoever, whether accrued or unaccrued, at law or equity, known or unknown, fixed or contingent arising out of or related in any way to the Claims that: (a) were or could have been alleged in the Action; or (b) arise out of, relate to, or result from actual or threatened past, present, or future contamination of the Site. Any release herein shall not be construed to prevent Cherokee from enforcing this Agreement.

5       No Release to Non-Settling Parties

The Settling Parties agree that nothing in this Agreement, including without limitation the releases contained herein, is intended to be, nor shall anything in this Agreement be construed as, a release of any Claim or cause of action or as a covenant not to sue any person or entity not expressly released by paragraphs 4.1 and 4.2. Nothing in this Agreement shall in any way limit, restrict, or impair the rights of the Settling Parties to assert Claims and defenses against any persons or entities who are not expressly released by paragraphs 4.1 and 4.2. Nothing in this Agreement is intended as, should be construed as, or may be argued by any Settling Party to be, a release or covenant not to sue for any Claim or cause of action, administrative or judicial, civil or criminal, past or future, in law or in equity, which Haskins or Cherokee may have against any person, firm, corporation, or other entity not expressly released by paragraphs 4.1 and 4.2.

6       Uncertainty of Facts and Law

Each party hereto acknowledges that there is a risk that, subsequent to the execution of this Agreement, it may incur, suffer, or sustain an injury, loss, damages, costs, attorneys' fees, expenses, or any of these, which relate to the Claims and the Action, which are unknown and unanticipated at the time this Agreement is signed, or which are not presently capable of being ascertained, and further that there is a risk that such damages as are known may become more serious than the Settling Parties now expect or anticipate. The Settling Parties further recognize that the law may change or their respective legal rights or remedies may change. Nevertheless, each of the Settling Parties hereto acknowledges that this Agreement has been negotiated and agreed upon in light of these uncertainties and hereby expressly waive any rights that each Settling Party may have in such unsuspected Claims, rights, or damages except as otherwise provided in this Agreement. In doing so, each Settling Party has had the benefit of legal counsel and has been advised of, understands, and knowingly and specifically waives its rights except as otherwise provided in this Agreement, under California Civil Code Section 1542, which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO THE CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING A RELEASE WHICH, IF KNOWN BY HIM OR HER, MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

7       Scope of this Agreement

It is expressly acknowledged that Settling Parties enter into this Agreement to compromise, settle, and fully resolve any and all Claims by and against each of the Settling Parties as to both liability and damages (specifically including past and future costs, fees, and expenses) related to the environmental contamination at Site, and that this Agreement settles,

resolves, and releases any and all past or present Claims between the Settling Parties regarding the actual, alleged, or threatened environmental contamination at the Site. This Agreement contemplates the termination of the Action as well as all past and present Claims between the Settling Parties arising out of the alleged or threatened contamination at the Site. The terms of this Agreement are not intended to, nor do they create any interest in this settlement to any third party under a third party beneficiary theory or any other theory.

8      Construction of this Agreement

The purpose and intent of this Agreement are to: (1) resolve all disputes between the Settling Parties; and (2) provide funding for the investigation and remediation of the Site. If there is any dispute regarding the terms of this Agreement or its purpose, then this Agreement should be interpreted as to put into effect those purposes recited above. The Settling Parties acknowledge and agree that the drafting of this Agreement has been a joint effort by the Settling Parties, and that this Agreement shall not be deemed prepared or drafted by any one of the Settling Parties. The terms of this Agreement shall be interpreted fairly and in accordance with their intent and not for or against any one of the Settling Parties. This Agreement is the result of extensive adversarial proceedings and good faith, arms-length negotiations facilitated by a mediator and without fraud or collusion by the Settling Parties. The Settling Parties further acknowledge and agree that each of the Settling Parties possesses equal bargaining power with respect to the terms of this Agreement.

9      Good Faith

The Settling Parties agree that if either Settling Party moves the Court for good faith settlement determination under California Code of Civil Procedure sections 877 or 877.6, the other Settling Party will join or otherwise support the good faith motion so long as the moving papers are consistent with this Agreement. The effectiveness of the settlement contained herein is not, however, conditioned or otherwise dependent upon the outcome of such a motion.

10     No Admission of Liability

By entering into this Agreement, the Settling Parties make no admission that they have any liability or obligation to each other or to any other person arising out of or in connection with any environmental contamination at, around or from the Site. The Settling Parties agree that they are entering into this Agreement solely as a business decision for the purposes of settling certain disputes between them and to avoid the cost of further litigation with respect to these disputes. This Agreement is the product of informed negotiations and compromises of previously stated legal positions. Nothing contained in this Agreement shall be construed as an admission by any party as to the merit or lack of merit of any particular theory relating to the payment of Claims arising from or relating to Settling Parties ownership or operations or any other type of Claim. Statements made in the course of negotiations have been and shall be without prejudice to the rights of the parties in any disputes or transactions with any other persons or entities not party to this Agreement.

11     Controlling Law

This Agreement has been negotiated and entered into in the State of California involving a site within this State. The Settling Parties agree that this Agreement shall be governed by and

construed in accordance with, the laws of the United States and of the State of California. No Settling Party shall argue or assert that any law other than California law applies to the governance or construction of this Agreement.

12    Assignment of Claims to the Trust

12.1    Cherokee hereby irrevocably assigns to the Trust all of its rights of recovery under the stipulated judgment against Haskins to be entered into as provided in paragraph 3.1. Cherokee also irrevocably assigns to the Trust such Claims for contribution related to the subject matter of the Action as Cherokee has against third parties unaffiliated with Cherokee, excluding Claims against any of Cherokee's insurers. Cherokee warrants that its rights of recovery against Haskins under the proposed stipulated judgment and the assigned Claims for contribution have not previously been assigned, pledged, encumbered or hypothecated to any other individual or entity. Cherokee shall not release, discharge, pledge, hypothecate, assign, encumber, nor impair or impact by any covenant any rights of recovery against Haskins it may have in the stipulated judgment. The assignment shall include all rights of Cherokee to hold, investigate, assert, negotiate, litigate, resolve, dispose of, or otherwise manage the assigned rights of recovery under the stipulated judgment against Haskins so as to maximize their net value, if any, to the Trust, as deemed appropriate by the trustee of the Trust, in his sole and absolute discretion.

12.2    Proceeds from enforcement of rights under the stipulated judgment and Claims assigned under paragraph 12.1, other than any award of attorney fees or costs, must be deposited by the Trustee in the Trust.

12.3    The declaration of trust for the Trust, executed on August ___, 2013, may not be amended except as expressly provided therein, which requirements for amendment are incorporated herein by reference.

13    Integration

This Agreement is fully enforceable, binding and subject to disclosure. This Agreement constitutes the final and complete agreement between the Settling Parties regarding settlement of the Action. Any and all prior understandings and agreements in connection with or relating to settlement of the Action, including the Stipulation for Settlement executed in the mediation conducted by the Hon. Alfred G. Chiantelli (ret.) on March 19, 2013, are superseded by this Agreement. Neither Haskins nor Cherokee shall have obligations to the other Settling Party except as set forth in this Agreement. Each of the Settling Parties agrees, represents, and warrants that, in entering into this Agreement, it is not relying upon any representation, promise, understanding, statement or inducement not expressly set forth in this Agreement.

14    Remedies

It is understood that money damages would not be a sufficient remedy for failure of Haskins or Cherokee to perform their respective obligations under this Agreement. Accordingly, the Settling Parties shall be entitled to specific performance and injunctive relief as remedies for any such breach. The remedies of specific performance and injunctive relief for failure to perform obligations under this Agreement shall not be deemed the exclusive remedies for a violation of

the terms of this Agreement, but shall be in addition to all other remedies in this Agreement or otherwise available to the Settling Parties at law or in equity.

15    Modification of this Agreement

This Agreement may be amended or supplemented only by a writing that is signed by duly authorized representatives of all of the Settling Parties. No term or provision of this Agreement will be considered waived by either Settling Party, and no breach excused by either Settling Party, unless such waiver or consent is in writing signed on behalf of the Settling Party against whom the waiver is asserted. No consent by either Settling Party to, or waiver of, a breach by either Settling Party, whether express or implied, will constitute a consent to, waiver of, or excuse of any other, different, or subsequent breach by either Settling Party.

16    Effect of Partial Invalidity

The terms and conditions of this Agreement are not severable. However, should any provision of this Agreement be declared or determined by any court to be illegal or invalid, (i) the validity of the remaining parts, terms or provisions shall not be affected thereby and said illegal or invalid part, term or provision shall not be deemed to be a part of this Agreement; and (ii) the Parties shall negotiate in good faith to replace the offending language with language which accomplishes as nearly as legally permissible the intent of the original. If agreement cannot be reached after good faith negotiations between the Settling Parties, any Settling Party may petition the Court for a declaration replacing the illegal or invalid language with terms consistent with the purposes described in this Agreement and the Trust, and the Settling Parties shall be bound by that declaration, subject to any right of appeal.

17    Counterparts

The Settling Parties agree that separate copies of this Agreement may be signed by each of the Settling Parties and this Agreement will have the same force and effect as if the original had been signed by all the Settling Parties.

18    Consideration

This Agreement and the covenants contained herein are supported by the mutual promises and covenants contained herein, which the Settling Parties agree constitute good and valuable consideration.

19    Voluntary Undertaking

The Settling Parties acknowledge that they have read this Agreement and are fully aware of the contents of this Agreement and its legal effect. This Agreement is entered into voluntarily and without any coercion by or undue influence on the part of any person, firm, or corporation.

20    Independent Legal Advice and Investigation

Each of the Settling Parties affirms and acknowledges that it has read and fully appreciates and understands the words, terms, conditions and provisions of this Agreement, is fully and entirely satisfied with the same, has been represented by legal counsel of its choice in the negotiation, preparation and execution of this Agreement, has conferred with its counsel prior

to the execution of this Agreement concerning the advisability of executing this Agreement and the meaning of California Civil Code Section 1542 and has executed this Agreement voluntarily and of its own free will and act. Each of the Settling Parties, by its execution of this Agreement, represents that it has reviewed each term of this Agreement with its legal counsel, and that hereafter no Settling Party shall deny the validity of this Agreement on the ground that it did not have full and adequate legal counsel. The Settling Parties hereby acknowledge that they have all participated in the drafting of this Agreement, that they are satisfied with the terms incorporated herein, which represent a full and fair settlement, and specifically agree that any rule of construction, to the effect that ambiguities are to be resolved against the drafting party, shall not apply to the interpretation of this Agreement.

21      Inadmissibility of Settlement Communications.

The terms of this Agreement were arrived at in the course of a mediation conducted on March 19, 2013 by the Hon. Alfred G. Chiantelli (ret.). The Settling Parties previously conducted mediation sessions with mediator Jack Skelton. The negotiations leading to this Agreement have been conducted during arm's length and good faith negotiations in reliance upon the provisions of California Evidence Code Sections 1115-1128 and 1152 and Rule 408 of the Federal Rules of Evidence and similar state law provisions in other states that preclude discovery of, or the introduction of evidence regarding, anything said or any admission made in the course of or pursuant to a mediation, or an offer of compromise or conduct or statements made in negotiation of an offer of compromise. With respect to all matters encompassed by this Agreement, the parties hereby reserve all previously-held positions and all other rights in regard to parties not released by this Agreement. Any evidence of such communications or conduct shall not be discoverable or admissible in any litigation. Nothing in this paragraph 21 prevents disclosure of this Agreement or admission of this Agreement into evidence in any proceeding to enforce or interpret its terms.

22      Warranty of Authority

Each Settling Party warrants that the person executing this Agreement on his or its behalf has the authority to do so.

23      Reservation of Jurisdiction

The Settling Parties wish to retain the District Court's jurisdiction to enforce this Agreement. They therefore will request that the Court incorporate this Agreement into its stipulated judgment.

24      Notice

All notices or other communications that any Settling Party desires or is required to give shall be given in writing and shall be deemed to have been given if hand delivered, sent by email and confirmed to have been received, or delivered by certified or registered mail, postage prepaid, return receipt requested the Settling Party at the address noted below or such other address as a Settling Party may designate in writing from time to time:

| To Haskins: | Richard E. Haskins |
| | 114 South Maple Avenue |
| | South San Francisco, CA 94080 |
| | Telephone: (650) 761-1550 |
| | |
| | Email: Haskinsequip@aol.com |
| | |
| With a Copy To: | Bret A. Stone, Esq. |
| | Paladin Law Group® LLP |
| | 1176 Boulevard Way |
| | Walnut Creek, CA 94595 |
| | Telephone: (925) 947-5700 |
| | |
| | Email: BStone@PaladinLaw.com |
| | |
| To Cherokee: | Bret Batchelder |
| | Cherokee Investment Partners, LLC |
| | 111 East Hargett Street, Suite 300 |
| | Raleigh, NC 27601 |
| | Telephone: (919) 743-2500 |
| | |
| | Email: bbatchelder@cherokeefund.com |
| | |
| With a Copy To: | Stephen McKae, Esq. |
| | Wendel, Rosen, Black & Dean, LLP |
| | 1111 Broadway, 24th Floor |
| | Oakland, CA 94607 |
| | Telephone: (510) 834-6600 |
| | |
| | Email: smckae@wendel.com |
| | |
| With a Copy To: | Garland Graham, Esq. |
| | Schell Bray PLLC |
| | 1500 Renaissance Plaza |
| | 230 North Elm Street |
| | Greensboro, NC 27401 |
| | Telephone: (336) 370-8800 |
| | Email: ggraham@schellbray.com |

EACH OF THE UNDERSIGNED PARTIES HAS READ AND UNDERSTANDS THIS AGREEMENT IN ITS ENTIRETY.

DATED: August ___, 2013      By: _____
                                      Richard E. Haskins

DATED: August ___, 2013      By: _____
                                      Arthur L. Haskins

DATED: August ___, 2013      By: _____
                                      Estate of Arthur "Buzz" Haskins, Deceased

DATED: August ___, 2013      By: _____
                                      Cherokee Grand Avenue LLC

DATED: August ___, 2013      By: _____
                                      Cherokee San Francisco LLC

DATED: August ___, 2013      By: _____
                                      Cherokee Investment Partners II, LP by
                                      Cherokee Investment Partners, LLC, its Manager,
                                      by Bret A. Batchelder, Managing Director

DATED: August ___, 2013      By: _____
                                      Cherokee Acquisition Corp.

Approved as to form:

DATED: August ___, 2013      By:    Paladin Law Group® LLP


                                      _____
                                      Bret A. Stone, Esq.
                                      Attorneys for Plaintiffs Richard E. Haskins, Arthur
                                      L. Haskins, and the Estate of Arthur "Buzz"
                                      Haskins, Jr.

DATED: August ___, 2013      By:    Wendel, Rosen, Black & Dean, LLP


                                      _____
                                      Stephen McKae, Esq.
                                      Attorneys for Defendants Cherokee Grand Avenue
                                      LLC, Cherokee San Francisco LLC, Cherokee
                                      Investment Partners II, LP, and Cherokee
                                      Acquisition Corp.

017481.0001\3064303.10

EACH OF THE UNDERSIGNED PARTIES HAS READ AND UNDERSTANDS THIS AGREEMENT IN ITS ENTIRETY.

DATED: August ___, 2013     By: _____
                                  Richard E. Haskins

DATED: August ___, 2013     By: _____
                                  Arthur L. Haskins

DATED: August ___, 2013     By: _____
                                  Estate of Arthur "Buzz" Haskins, Deceased

DATED: August ___, 2013     By: _____
                                  Cherokee Grand Avenue LLC

DATED: August ___, 2013     By: _____
                                  Cherokee San Francisco LLC

DATED: August ___, 2013     By: _____
                                  Cherokee Investment Partners II, LP by
                                  Cherokee Investment Partners, LLC, its Manager,
                                  by Bret A. Batchelder, Managing Director

DATED: August ___, 2013     By: _____
                                  Cherokee Acquisition Corp.

Approved as to form:

DATED: August ___, 2013     By:    Paladin Law Group® LLP

                                   _____
                                   Bret A. Stone, Esq.
                                   Attorneys for Plaintiffs Richard E. Haskins, Arthur
                                   L. Haskins, and the Estate of Arthur "Buzz"
                                   Haskins, Jr.

DATED: August ___, 2013     By:    Wendel, Rosen, Black & Dean, LLP

                                   _____
                                   Stephen McKae, Esq.
                                   Attorneys for Defendants Cherokee Grand Avenue
                                   LLC, Cherokee San Francisco LLC, Cherokee
                                   Investment Partners II, LP, and Cherokee
                                   Acquisition Corp.

EACH OF THE UNDERSIGNED PARTIES HAS READ AND UNDERSTANDS THIS AGREEMENT IN ITS ENTIRETY.

DATED: August ___, 2013      By: _____
                                  Richard E. Haskins

DATED: August ___, 2013      By: _____
                                  Arthur L. Haskins

DATED: August ___, 2013      By: _____
                                  Estate of Arthur "Buzz" Haskins, Deceased

DATED: August _1_, 2013      By: _____ President
                                  Cherokee Grand Avenue LLC

DATED: August _1_, 2013      By: _____ President
                                  Cherokee San Francisco LLC

DATED: August _1_, 2013      By: _____ Managing Director
                                  Cherokee Investment Partners II, LP by
                                  Cherokee Investment Partners, LLC, its Manager,
                                  by Bret A. Batchelder, Managing Director

DATED: August _1_, 2013      By: _____ Managing Member of
                                  Cherokee Acquisition Corp.   Managing Member

Approved as to form:

DATED: August ___, 2013      By:  Paladin Law Group® LLP

                                  _____
                                  Bret A. Stone, Esq.
                                  Attorneys for Plaintiffs Richard E. Haskins, Arthur
                                  L. Haskins, and the Estate of Arthur "Buzz"
                                  Haskins, Jr.

DATED: August _/_, 2013      By:  Wendel, Rosen, Black & Dean, LLP

                                  _____
                                  Stephen McKae, Esq.
                                  Attorneys for Defendants Cherokee Grand Avenue
                                  LLC, Cherokee San Francisco LLC, Cherokee
                                  Investment Partners II, LP, and Cherokee
                                  Acquisition Corp.

017481.0001\3064303.10

Page 11 of 12

EACH OF THE UNDERSIGNED PARTIES HAS READ AND UNDERSTANDS THIS
AGREEMENT IN ITS ENTIRETY.

DATED: August ___, 2013      By: _____
                                      Richard E. Haskins

DATED: August ___, 2013      By: _____
                                      Arthur L. Haskins

DATED: August ___, 2013      By: _____
                                      Estate of Arthur "Buzz" Haskins, Deceased

DATED: August ___, 2013      By: _____
                                      Cherokee Grand Avenue LLC

DATED: August ___, 2013      By: _____
                                      Cherokee San Francisco LLC

DATED: August ___, 2013      By: _____
                                      Cherokee Investment Partners II, LP by
                                      Cherokee Investment Partners, LLC, its Manager,
                                      by Bret A. Batchelder, Managing Director

DATED: August ___, 2013      By: _____
                                      Cherokee Acquisition Corp.

Approved as to form:

DATED: August 1, 2013      By:   Paladin Law Group® LLP

                                      _____
                                      Bret A. Stone, Esq.
                                      Attorneys for Plaintiffs Richard E. Haskins, Arthur
                                      L. Haskins, and the Estate of Arthur "Buzz"
                                      Haskins, Jr.

DATED: August ___, 2013      By:   Wendel, Rosen, Black & Dean, LLP

                                      _____
                                      Stephen McKae, Esq.
                                      Attorneys for Defendants Cherokee Grand Avenue
                                      LLC, Cherokee San Francisco LLC, Cherokee
                                      Investment Partners II, LP, and Cherokee
                                      Acquisition Corp.

# APPENDIX B

## TRUST CORPUS

Assets transferable to the Trust pursuant to paragraph 3.4 of the Trust Declaration include:

1. Assignment of Judgment and Claims by Cherokee as provided in paragraphs 3.3 and 12.1 of the Settlement Agreement.

2. Release to the Trust of funds deposited by Cherokee into an attorney trust account upon satisfaction of the conditions described in paragraph 3.5 of the Settlement Agreement.

# APPENDIX C

# ESCROW AGREEMENT

# ESCROW AGREEMENT

THIS ESCROW AGREEMENT (this "Agreement") dated as of August 1, 2013 (the "Effective Date") is entered into by and among Richard E. Haskins, Trustee of the San Bruno Channel Remediation Trust dated August 1, 2013 ("Trustee"), Cherokee Investment Partners II, LP ("Fund II") and Schell Bray PLLC ("Escrow Holder"). The foregoing parties are sometimes referred to herein collectively as the "Parties" and individually as a "Party".

## RECITALS

A.      Trustee is the trustee of a remediation trust created under a Declaration of Trust for the San Bruno Channel Remediation Trust dated August 1, 2013 ("Trust"), which Trust is created pursuant to a Settlement Agreement and Release between Haskins and Cherokee executed on or about August 1, 2013 ("Settlement Agreement") and a Judgment Pursuant to Stipulation entered on _____, 2013 in the lawsuit pending in the United States District Court, Northern District of California, entitled *Richard E. Haskins, et al. v. Cherokee Grand Avenue LLC, et al.*, Case No. C-11-05142-JST ("Judgment"), which incorporates the Settlement Agreement. A copy of the Judgment as entered by the United States District Court, including all appendices thereto, is attached to this Agreement as Appendix A. Capitalized terms used herein without definition will have the meanings assigned to them in the Settlement Agreement, which is attached as an appendix to the Judgment.

B.      As a condition of the Settlement Agreement and the Judgment, Fund II has agreed that thirty (30) days following entry of judgment, Fund II will deposit the amount of One Hundred Fifty Thousand Dollars ($150,000) (the "Funds") into an attorney trust account selected by Fund II with instructions to be approved by the Settling Parties for release of funds to the Trust if certain conditions described further herein are met. If those conditions are not met, the full balance of the trust account is to be returned to Fund II. "Fund II", for purposes of this Agreement, includes any liquidating trust or similar entity designated by Fund II in writing to act on its behalf with respect to Fund II's affairs.

C.      The Parties wish to provide for the terms and conditions pursuant to which the trust account will be held, disbursed and released.

## TERMS OF AGREEMENT

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereto agree as follows:

1.      **Trust Account.** The Funds shall be held by Escrow Holder in escrow in its general trust account ("Trust Account") as that term is defined in North Carolina State Bar Rules of Professional Conduct, Rule 1.15-1(h). The Trust Account shall be established according to North Carolina State Bar Rules of Professional Conduct, Rule 1.15 and may be comingled with other attorney trust account funds. Funds in the Trust Account shall be distributed only as provided herein.

2.    **Notification of Trustee.** Escrow Holder will promptly notify Trustee and Fund II upon receipt of Funds in the Trust Account.

3.    **Investment of Account.** The Trust Account shall be maintained at Wells Fargo Bank, N.A. in a non-interest-bearing account as directed in writing by Fund II. Except as provided in the previous sentence, the Escrow Holder shall have no duty to invest the Funds on behalf of Fund II. Fund II may, however, any time request transfer of the Funds to an interest-bearing account at Wells Fargo Bank, N.A., in which case any interest earned on the Trust Account, less amounts deducted for bank service charges and taxes, shall belong to Fund II and may be distributed to Fund II upon Fund II's request.

4.    **Disbursements.**

4.1    If, within five (5) years from entry of the Judgment attached hereto as Appendix A, the Trustee provides to Fund II and the Escrow Holder certification of the deposit by Richard E. Haskins, Arthur L. Haskins, and/or the Estate of Arthur "Buzz" Haskins, Jr. (collectively, "Haskins") into a bank account of the Trust (the "Trust Bank Account") not less than One Million Two Hundred Thousand Dollars ($1,200,000) (cumulatively, and whether the total deposit has been made in one or more installments), Escrow Holder shall transfer to Trustee from the Trust Account the amount of One Hundred Fifty Thousand Dollars ($150,000) and will notify Fund II of the transfer. The transfer shall be by certified bank check payable to the Trustee and delivered by overnight mail or by wire transfer pursuant to instructions provided by the Trustee. The transfer shall occur not later than thirty (30) calendar days following receipt of the certification and the documents and information required to accompany the certification, as specified in paragraph 4.2. The balance, if any, of the Trust Account after payment of any bank charges will be returned to Fund II.

4.2    The certification must be accompanied by: (i) evidence/confirmation of the deposit specified above into the Trust Bank Account; (ii) any amendments to the Trust Agreement along with the written consents of Fund II to each amendment and copies of any notices of proposed amendments given to Fund II by the Trustee pursuant to paragraph 3.6.1 of the Trust; (iii) a statement that Fund II is required by 26 C.F.R. Section 1.468B-3(e)(2) to supply a statement specified in that section to the Internal Revenue Service and Trustee no later than February 15 of the year following the calendar year in which the transfer is made to the Trust; (iv) the federal tax identification number for the Trust, which is required to complete the statement; (v) proof of service to Fund II of notice of the request of the Trustee for distribution of funds from the account; and (vi) transfer instructions. If the Escrow Holder deems the certification and accompanying evidence to be insufficient in any respect, the Escrow Holder will, within fifteen (15) days of receipt of the certification, notify the Trustee and Fund II in writing of the manner in which the certification or accompanying evidence are deficient.

4.3    If, by 5:00 p.m. EDT on the date five (5) years from entry of the Judgment, Escrow Holder has not received from the Trustee such certification and evidence of deposit, then the Escrow Holder will transfer the full balance of the Trust Account after payment of any bank charges to Fund II and will notify Trustee of the transfer. Transfers to Fund II shall be by certified bank check payable to Fund II or by wire transfer pursuant to instructions provided by Fund II.

5.      **Third Party Notices.** Escrow Holder may, at its discretion and without liability of any kind or nature whatsoever, disregard any other notices or communications received by it other than pursuant to this Agreement from any Party in connection with disbursements to be made from the Trust Account.

6.      **No Agency.** Fund II and Trustee each agree that: (a) Escrow Holder is acting solely as a stakeholder at their request and convenience and, as such, shall not be deemed an agent of either of the parties; (b) Escrow Holder shall be entitled to rely on the notices or certificates as may be furnished to it pursuant to this Agreement without inquiring into their sufficiency, correctness, validity or genuineness; (c) Escrow Holder shall be discharged and released from any and all responsibility or liability with respect to the Trust Account and its actions or inactions pursuant to this Agreement except for Escrow Holder's bad faith, willful malfeasance or gross negligence; (d) Escrow Holder shall not be liable for any action taken by it in good faith and believed by it to be authorized or within the rights or powers conferred on it by this Agreement, may consult with counsel of its own choice and shall have full and complete authorization and protection for any action taken or suffered by it hereunder in good faith or in accordance with the opinion of counsel; and (e) except as provided in the cost-sharing provisions of paragraph 8, Fund II will indemnify and hold the Escrow Holder harmless from any liability and responsibility for which it is discharged and released or not responsible as provided herein. Acting as Escrow Holder shall not affect the ability of Schell Bray to represent Fund II in any matter with respect to this Agreement or otherwise.

7.      **Duties of Escrow Holder.** The duties and obligations of the Escrow Holder hereunder shall be determined solely by the express provisions of this Agreement and the North Carolina State Bar Rules of Professional Conduct, and Escrow Holder shall have no duties other than those expressly imposed hereby, nor shall the Escrow Holder be required to take any action other than in accordance with the terms hereof. Fund II shall be responsible to pay all costs and fees payable to Escrow Holder, if any. Escrow Holder may resign and be discharged from its duties or obligations hereunder by giving notice in writing of such resignation Fund II and Trustee, specifying a date when such resignation shall take effect. Upon such resignation, Escrow Holder shall either turn over the Trust Account to a successor selected by Fund II, who shall assume in writing the obligations of the Escrow Holder hereunder and agree to performance in accordance herewith, or in the alternative shall file an interpleader action and/or deposit the Trust Account with a court of competent jurisdiction. Provided, that if the proposed successor is not subject to the North Carolina State Bar Rules of Professional Conduct, consent of the Trustee shall be required.

8.      **Arbitration; Attorneys' Fees.** If any Party shall have a dispute or controversy with, or claim against, Escrow Holder arising out of this Agreement or otherwise, the Parties and Escrow Holder agree that, unless Escrow Holder decides to file an action in interpleader, the same shall be arbitrated in Oakland, California by a single arbitrator pursuant to the JAMS Comprehensive Arbitration Rules & Procedures. Judgment upon any award rendered by the arbitrator may be entered in any court having jurisdiction. Nothing in this paragraph precludes any party from seeking equitable or other relief from a court of competent jurisdiction to enforce or protect the obligation to arbitrate the dispute. The cost of any such arbitration, including Escrow Holder's reasonable attorney fees and expenses, shall be borne equally by the Trustee and Fund II.

9. **No Third Party Beneficiaries.** Escrow Holder shall have duties only to the other Parties to this Agreement, and only as specified herein, and no person shall be deemed to be a third party beneficiary of any instructions given to Escrow Holder pursuant to this Agreement.

10. **Notices.** All notices or other communications relating to this Agreement shall be given in writing and shall be deemed to have been given if hand delivered, sent by email and confirmed to have been received, or delivered by certified or registered mail, postage prepaid, return receipt requested the Party at the address noted below or such other address as a Party may designate in writing from time to time:

| | |
|---|---|
| To Trustee | Richard E. Haskins<br>114 South Maple Avenue<br>South San Francisco, CA 94080<br>Telephone: (650) 761-1550<br>Email: Haskinsequip@aol.com |
| With a Copy To: | Bret A. Stone, Esq.<br>Paladin Law Group® LLP<br>1176 Boulevard Way<br>Walnut Creek, CA 94595<br>Telephone: (925) 947-5700<br>Email: BStone@PaladinLaw.com |
| To Fund II: | Bret Batchelder<br>Cherokee Investment Partners, LLC<br>111 East Hargett Street, Suite 300<br>Raleigh, NC 27601<br>Telephone: (919) 743-2500<br>Email: bbatchelder@cherokeefund.com |
| With a Copy To: | Stephen McKae, Esq.<br>Wendel, Rosen, Black & Dean, LLP<br>1111 Broadway, 24th Floor<br>Oakland, CA 94607<br>Telephone: (510) 834-6600<br>smckae@wendel.com |
| With a Copy To: | Garland Graham, Esq.<br>Schell Bray PLLC<br>1500 Renaissance Plaza<br>230 North Elm Street<br>Greensboro, NC 27401<br>Telephone: (336) 370-8800<br>Email: ggraham@schellbray.com |

To Escrow Holder:     Thomas C. Watkins, Esq.
                      Schell Bray PLLC
                      1500 Renaissance Plaza
                      230 North Elm Street
                      Greensboro, NC 27401
                      Telephone: (336) 370-8800
                      Email: tcwatkins@schellbray.com

11.     **Counterparts; Facsimile/Digital Signatures.** This Agreement may be executed in counterparts, each of which shall constitute an original and all of which, when taken together, shall constitute one and the same instrument. A facsimile or other digital signature will have the same force and effect as an original signature.

12.     **Successors.** This Agreement shall bind and inure to the benefit of the parties hereto and their respective successors and assigns.

13.     **Governing Law.** This Agreement, except as otherwise expressly provided herein, shall be governed by the laws of the State of California without giving effect to the principles of any conflicts of laws.

14.     **Recitals; Exhibits.** The recitals at the beginning of this Agreement and Judgment referenced in and attached to this Agreement as Appendix A are incorporated in and made a part of this Agreement.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first written above.

DATED: August __, 2013        SAN BRUNO CHANNEL REMEDIATION TRUST

                              By: _____
                                  Richard E. Haskins, Trustee


DATED: August __, 2013        CHEROKEE INVESTMENT PARTNERS II, L.P.

                              By: _____
                                  Cherokee Investment Partners, LLC, its Manager,
                                  by Bret A. Batchelder, Managing Director


DATED: August __, 2013        SCHELL BRAY PLLC

                              By: _____
                                  Thomas C. Watkins, Managing Member

To Escrow Holder:        Thomas C. Watkins, Esq.
Schell Bray PLLC
1500 Renaissance Plaza
230 North Elm Street
Greensboro, NC 27401
Telephone: (336) 370-8800
Email: tcwatkins@schellbray.com

11.      **Counterparts; Facsimile/Digital Signatures.** This Agreement may be executed in counterparts, each of which shall constitute an original and all of which, when taken together, shall constitute one and the same instrument. A facsimile or other digital signature will have the same force and effect as an original signature.

12.      **Successors.** This Agreement shall bind and inure to the benefit of the parties hereto and their respective successors and assigns.

13.      **Governing Law.** This Agreement, except as otherwise expressly provided herein, shall be governed by the laws of the State of California without giving effect to the principles of any conflicts of laws.

14.      **Recitals; Exhibits.** The recitals at the beginning of this Agreement and Judgment referenced in and attached to this Agreement as Appendix A are incorporated in and made a part of this Agreement.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first written above.

DATED: August __, 2013        SAN BRUNO CHANNEL REMEDIATION TRUST

By:   _____
      Richard E. Haskins, Trustee

DATED: August 1, 2013        CHEROKEE INVESTMENT PARTNERS II, L.P.

By:   _____
      Cherokee Investment Partners, LLC, its Manager,
      by Bret A. Batchelder, Managing Director

DATED: August 1, 2013        SCHELL BRAY PLLC

By:   _____
      Thomas C. Watkins, Managing Member

017481.0001\3070833.5